**In re IDEN.**

No. 878.

District Court, E. D. Virginia,
Alexandria Division.

July 30, 1940.

John W. Cleaton, of Washington, D. C.,
for petitioner.

R. A. Bickers, of Culpeper, Va., for the
New York Life Ins. Co.

POLLARD, District Judge.

On March 16, 1940, Virginia John Iden
filed with the District Court of the United
States for the Eastern District of Virginia,
at Alexandria, a "debtor's petition in pro-
ceedings under section 75 of the Bank-
ruptcy Act", 11 U.S.C.A. § 203, alleging
that "she is a farmer within the meaning
of the statute under which she proceeds
in that the principal portion of her income
is derived from farming operations". The
petitioner is the same person who hereto-
fore filed a petition under the same act.
This former petition was dismissed by this
court and its action was approved by the
Circuit Court of Appeals (Iden v. New

York Life Ins. Co., 4 Cir., 107 F.2d 695). On June 20, 1940, and before the petition in the instant case had been referred to a conciliation commissioner, the New York Life Insurance Company, being the holder of a debt secured by mortgage on land listed by Mrs. Iden in her schedules, filed its motion to dismiss the petition on the ground, among others, that the petitioner "is not a debtor farmer as defined in subsection r of section 75 of the Bankruptcy Act". On June 28, 1940, the petitioner filed her "answer to motion for dismissal". The matter was set for hearing on July 10, 1940, on the motion to dismiss and the answer thereto, at which time the court heard the evidence and the arguments of counsel. The following findings of fact are based upon the evidence so introduced:

Mrs. Iden is an aged widow. Her exact age does not appear from the evidence, but her son testified that she was more than ninety years of age. She is better preserved mentally and physically than the average person who attains the age she has reached, but she was unable to attend the hearing. Her husband, B. F. Iden, died in the year 1933, leaving a will, by the terms of which he devised to her an estate for life in the real estate adjoining the Town of Manassas known as Tudor Hall, with remainder after her death to their five children. Mrs. Iden subsequently acquired the one-fifth remainder interest of one of the children. In the year 1924 B. F. Iden placed a mortgage on the property in favor of New York Life Insurance Company in which mortgage Mrs. Iden united. The mortgaged property consisted of two tracts of land, the first containing 40 acres on which was located the dwelling house and outbuildings, and the second containing 148 acres adjoining the first tract. Subsequently the 148-acre tract was sold and the proceeds of sale were applied on the mortgage of the New York Life Insurance Company. The remaining tract with improvements is the real estate listed by Mrs. Iden in her schedules as "forty acres of land with improvements thereon adjoining the City of Manassas known as Tudor Hall—estimated value $30,000". Since the death of B. F. Iden the property has been managed by Mrs. Iden's son, Dr. John H. Iden, under a power of attorney given to him by his mother. During the period from 1934 to 1938 the 40-acre tract, with the exception of the dwelling, was rented by Dr. Iden to Henry Fletcher who farmed it on shares. There are only about twenty-one tillable acres in the 40-acre tract. The evidence is vague as to the value of the portion of the crops received by Mrs. Iden from Mr. Fletcher. His estimate is about $200 a year. In the year 1938, Mr. Hooe, a great-nephew of Mrs. Iden, came to live on the place. He is not a farmer but is a street car motorman in the City of Washington where he works six days a week and commutes back and forth each day, a distance of thirty miles. He says that his understanding is with his great-aunt and that in exchange for giving her a room and board he has the right to occupy the house with his family consisting of his wife and five children and all that he can make off of the place. Dr. Iden says that he made the arrangement with Mr. Hooe and that the latter does not farm the place but is entitled to one-half of the crops which may be raised thereon by a tenant selected by Dr. Iden. At any rate no crops have been planted on the place since 1938 and the only farming operations carried on since that time have been several cuttings of natural grass. Mr. Hooe raises hogs, has several cows and some poultry, and cultivates a garden, but it does not clearly appear whether the products thus produced are for sale or for the use of Mr. Hooe and his family. Mrs. Iden lives in the house with Mr. Hooe and his family and receives free room and board. The house contains ten or twelve rooms and is one of the largest and at one time was one of the most pretentious residences at Manassas. Mrs. Iden has no other property of any kind with the exception of an unimproved lot in Manassas from which she receives no income.

Before determining whether Mrs. Iden is a farmer within the meaning of the act, it is necessary to dispose of certain preliminary questions raised in her behalf. It is urged that she was entitled to a trial by jury on the issue as to whether she was a farmer within the meaning of subsection r. There is no merit in this contention. See section 19 of the Bankruptcy Act, 11 U.S.C.A. § 42; Gilbert's Collier on Bankruptcy, secs. 641–644; Barton v. Barbour, 104 U.S. 126, 26 L.Ed. 672, 673. But even if she were entitled to a trial by jury, such right was waived by her. General Order in Bankruptcy No. 37, 11 U.S.C.A. following section 53, and Rules of Civil Procedure, Rule No. 38(b), 28 U.S.C.A. following section 723c. It is also

insisted that the motion for dismissal was prematurely made because section 75 of the Bankruptcy Act is "self executing" and provides a form of procedure which will not permit the court to pass upon a motion to dismiss "except upon petition made to and granted by the judge after hearing and report by the conciliation commissioner". Specifically the petitioner relies on subsection *o* of section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203, sub. *o*. It is only necessary to say that a motion to dismiss is not such a "proceeding" as is contemplated by subsection *o*. Actually such motion is one which goes to the jurisdiction of the court and if well taken the court is without authority to refer the proceeding to a conciliation commissioner for hearing and report.

Subsection r of section 75 of the Bankruptcy Act, defining a "farmer" for the purposes of the Act, provides: "For the purposes of this section, § 4(b) [section 22(b)], and § 74 [section 202], the term 'farmer' includes not only an individual who is primarily bona fide personally engaged in producing products of the soil, but also any individual who is primarily bona fide personally engaged in dairy farming, the production of poultry or livestock, or the production of poultry products or livestock products in their unmanufactured state, or the principal part of whose income is derived from any one or more of the foregoing operations, and includes the personal representative of a deceased farmer; and a farmer shall be deemed a resident of any county in which such operations occur".

The petitioner does not claim the status of a farmer because she is primarily bona fide personally engaged in producing products of the soil. It is conceded that she is too old and infirm to follow any vocation. The contention is that she is entitled to the benefits of the act under the second branch of the definition, in that the principal part of her income is derived from one or more of the farming operations enumerated by the act. The only income which the petitioner has received, certainly for the last two years, is her room and board from her great-nephew in the form of rent for the property. This tenant is not a farmer but is a street car motorman in the City of Washington at which occupation he works six days a week. It is true that he cultivates a garden and raises some poultry and livestock, but such operations are merely incidental to his primary occupation. The fatal defect in the petitioner's case is that neither she nor her tenant from whom she receives the principal part of her income are engaged in the vocation and industry which the statute was designed to protect. Neither his labor nor the rental he pays smack of the soil and the roots of the petitioner's income do not go down into her land, but her income is derived primarily from the right to occupy the house located thereon. See First National Bank v. Beach, 301 U.S. 435, 57 S.Ct. 801, 81 L.Ed. 1206.

An order will be entered dismissing the petition.