## FIRST NATIONAL BANK & TRUST CO., TRUSTEE,
## *v.* BEACH.

No. 621.  Argued April 27, 28, 1937.—Decided May 17, 1937.

*Mr. Arthur B. Weiss* for petitioner.

*Mr. Sydney P. Simons* for respondent.

MR. JUSTICE CARDOZO delivered the opinion of the·
Court.

The question is whether respondent, who has filed a
petition under § 75 of the Bankruptcy Act (11 U. S. C.

§ 203) for the composition or extension of his debts, is a farmer as there defined.

The facts are stipulated as follows: Beach was the owner of a farm with five houses and a barn on it where he had lived from his birth, occupying one of the houses with his wife and children as his homestead. The farm had been in the ownership of his family for two centuries and over. For a time he had been engaged in mercantile pursuits, but in 1930 owing to heavy financial losses he began working on the farm again, and has given most of his time to it ever since. The land had an apple orchard of two hundred trees which gave him 1500 bushels of choice apples in 1931. He got little out of the orchard from 1933 to 1935, the trees during those years being affected by a blight. He sold pears from a few pear trees, and cultivated a large garden of about one acre, planting and raising all kinds of vegetables, fruits and flowers, more than enough to provide for his family. He raised hay and sold it, repaired the houses, cleaned out one of the wells, laid several miles of stone walls and two miles of barbed wire fence, carted stone from time to time to enable him to rebuild his fences, and raised and sold potatoes. He was occupied principally in raising poultry and eggs, having two hundred chickens in 1933, and about fifty from 1935 to the time of the trial. He kept three sheep for food; one horse for carting and hauling; and a miscellaneous assortment of farm tools, none purchased since 1921. His total income per annum from 1930 to 1935 was $4,000, of which $2200 was derived from renting three-quarters of the farm to various persons for grazing and cultivation. One of these tenants conducted a dairy, and bred, grazed and milked a herd of cows. The earnings from the sale of poultry and eggs were $200, from the sale of hay $75, and $25 from the sale of vegetables and flowers. Rentals from other real estate, not claimed to be farm property, made up the remainder of

his income, $1500. The farm in its entirety was subject to a mortgage of $100,000, held by a bank, and now under foreclosure.

When § 75 of the Bankruptcy Act was adopted in March, 1933, subsection (r) defined a farmer as follows: "For the purpose of this section and section 74, the term 'farmer' means any individual who is personally bona fide engaged primarily in farming operations or the principal part of whose income is derived from farming operations, and includes the personal representative of a deceased farmer; and a farmer shall be deemed a resident of any county in which such farming operations occur." Act of March 3, 1933, c. 204, 47 Stat. 1467, 1470, 1473; 11 U. S. C. § 203 (r).

The definition was amplified on May 15, 1935 by the following amendment: "For the purposes of this section, section 4 (b), and section 74, the term 'farmer' includes not only an individual who is primarily bona fide personally engaged in producing products of the soil, but also any individual who is primarily bona fide personally engaged in dairy farming, the production of poultry or livestock, or the production of poultry products or livestock products in their unmanufactured state, or the principal part of whose income is derived from any one or more of the foregoing operations, and includes the personal representative of a deceased farmer; and a farmer shall be deemed a resident of any county in which such operations occur." Act of May 15, 1935, c. 114, § 3, 49 Stat. 246; 11 U. S. C. § 203 (r).

A petition for relief under the section as thus amended was filed by the debtor on November 14, 1935, and was opposed by the mortgagee, the petitioner here. The District Court held that the debtor was not a farmer within the meaning of the statute, and so dismissed the proceeding. An appeal was allowed by the Court of Appeals for the Second Circuit, which reversed the judgment of dis-

missal, one judge dissenting. 86 F. (2d) 88. The reversal went upon the ground that the principal income of the debtor was derived from farming operations, if rents from the farm tenants ($2200) were included in the reckoning, as the court held that they should be. We granted certiorari, an important question being involved as to the meaning of an act of Congress.

The only effect of the 1935 amendments of the statute, in so far as they have to do with the definition of a farmer, was to make it clear that farming operations include dairy farming and the production of poultry and livestock products in their unmanufactured state as well as the cultivation of the products of the soil. There had been decisions to the contrary. *In re Palma Bros.*, 8 F. Supp. 920; *In re Stubbs*, 281 Fed. 568; House Report, No. 455, 74th Congress, 1st session, p. 2; Senate Report, No. 498, 74th Congress, 1st session, p. 4. For the purpose of the case at hand the amendments may be laid aside and the simpler phraseology of the section as it stood at the beginning may be accepted as the test. Was respondent a farmer because "personally bona fide engaged primarily in farming operations" or because "the principal part of his income was derived from farming operations"?

We do not try to fix the meaning of either of the two branches of this definition, considered in the abstract. The two are not equivalents. They were used by way of contrast. Occasions must have been in view when the receipt of income derived from farming operations would make a farmer out of some one who personally or primarily was engaged in different activities. A catalogue of such occasions might err for excess or for defect if made up in advance. Hypothetical situations are laid before us, and the argument is pressed that the definition will breed absurdity if applied to this one of them or that. We refuse to be led away from the limitations of the concrete case. The words "primarily engaged," as we find

them in the first branch of the definition, do not constitute a term of art. The words "income derived from farming operations" do not constitute such a term. In every case the totality of the facts is to be considered and appraised. We pass to that appraisal here.

■ Beach, the respondent, must be held, when the facts are viewed in combination, to have been "personally" and "primarily" engaged in farming operations.

He was in that business or in none. He was either a farmer or a man of leisure. Cf. *In re Glick*, 26 F. (2d) 398, 400. But the stipulation makes it clear that this last he certainly was not. He was in direct or personal possession of forty-eight acres, one-fourth of the large farm which had been in his family for years. A substantial part of this acreage he cultivated with his own labor, or applied, again with his own labor, to other agricultural uses. He did this, not for diversion or only in spare hours, but as an engrossing occupation, consuming, in the words of the stipulation, "the major portion of his time." The products of his toil were food for him and his dependents, and the farmhouse was a home. True, the money returns were scanty. To some extent this was so because of the blight which fell upon his apple orchard in 1932 or later, cutting down the revenues yielded from that source. The scantiness of the yield may have turned him into a bankrupt, but it did not change his occupation. One does not cease to be a farmer because drought or wind or pest may have rendered the farm barren. The critical fact is that the debtor worked an acreage large enough to count, that he did not work at anything else, and that he gave to this work, whether profitable or unprofitable, "the major portion of his time."

■ If Beach was a farmer because he cultivated a substantial farm, he did not step into another business by leasing other acres of the tract to tenants who were to use what they hired for grazing or cultivation and other

farming operations. We shall point out in a moment that the acres personally cultivated and those occupied by tenants are phases and aspects of a unitary calling. The result will be the same, however, though the farming and the leasing be viewed as disconnected, and not as parts of a composite whole. In that view, the farming is still the business; the leases are then investments, more profitable than the business, but leaving it unchanged. A farmer remains a farmer, just as a lawyer remains a lawyer, though the returns on his investments, while not enough to keep him going, are larger, none the less, than the profits of his labor.

■ The picture, however, is distorted if Beach is looked upon as a landlord with rentals unrelated to his primary vocation. His rentals like his labor smacked of the soil, and made him not less, but more a farmer than he would have been without them. How the case would stand if he had been a merchant or a doctor and had leased a tract of farming land to tenants, we do not have to say. What has happened here is different. The farming and the leasing must be viewed in combination if we are to gain a true perspective, the two tied together as principal and incident. A single tract of land belonging to the debtor has been worked by him in part, and in part worked by others to whom a section of the tract has been let for cultivation. Far from stepping into another business, he has been faithful to the old one in thus dividing up the tillage. To get a living out of the land in one way or another is the thread of common purpose that binds the labor and the leases, and enables us to find in them the tokens of the same vocation. In brief the man is seen to be a farmer by every test of common speech, though his income has been garnered in rents as well as products. We emphasize the fact afresh that the words of the statute to which meaning is to be given are not phrases of art with a changeless connotation. They have a color and a

content that may vary with the setting. Cf. *Surace* v. *Danna*, 248 N. Y. 18, 21; 161 N. E. 315; *Towne* v. *Eisner*, 245 U. S. 418, 425; *International Stevedoring Co.* v. *Haverty*, 272 U. S. 50. In the setting of this enterprise, the totality of its circumstances, the roots of the respondent's income go down into the soil.

■ Cases in other courts relied upon by the petitioner as excluding the respondent from the category of farmers are consistent for the most part with the ruling now made when the opinions are read with due relation to the facts.

Either the debtor posing as a farmer was engaged at the same time in some other line of business or the plots in cultivation were too small to make a farm. *Swift* v. *Mobley*, 28 F. (2d) 610; *In re Spengler*, 238 Fed. 862; *In re McMurray*, 8 F. Supp. 449; *In re Weis*, 10 F. Supp. 227.

The judgment is

*Affirmed.*