## In re OLSON.
### No. 3077.

District Court, N. D. Iowa, W. D.
Nov. 27, 1937.

Herrick & Ary, of Cherokee, Iowa, and S. E. & Geo. D. Long, of East Moline, Ill., for debtor.

E. H. Koopman, of Sibley, Iowa, for Equitable Life Assur. Soc. of New York.

O. H. Montzheimer, of Primghar, Iowa, for First Nat. Bank of Primghar, Iowa.

SCOTT, District Judge.

This is a debtor proceeding, and the matter for decision arises out of a hearing upon an order to show cause why the debtor's adjudication should not be vacated and his amended petition under subsection (s) of section 75 of the Bankruptcy Act, as amended, 11 U.S.C.A. § 203 (s), dismissed upon the ground that debtor is not personally bona fide engaged primarily in farming operations, and that the principal part of his income is not derived from farming operations within the purview of section 75 subdivision (r) of the Bankruptcy Act. The testimony taken at the hearing developed the further questions, whether debtor's petition was filed in good faith, and whether in debtor's circumstances there is any rational probability of his financial rehabilitation through proceedings to be had under said subsection (s).

The debtor filed his original petition with schedules on April 12, 1937, in the Western Division of the Northern District of Iowa, and on April 29, 1937, made application and obtained leave to amend his schedules, which was done on April 30, 1937, and on May 11th following an order was entered approving the petition as properly filed and referring the same to a conciliation commissioner. Proceedings having been had before the conciliation commissioner, on June 18, 1937, the commissioner reported showing a failure to obtain consent of creditors. Thereupon and on July 12th the debtor filed an amended petition and schedules under subsection (s), and on July 21st an order of adjudication was entered and a second reference to the conciliation commissioner ordered. On August 6, 1937, the debtor filed a complaint respecting the conduct of a mortgagee, its attorneys and agents in possession of certain real estate in the city of East Mo-

line, Ill.; and asked for the appointment of a receiver. Upon the hearing of said application the debtor appeared in person and by counsel, and the debtor submitted to an informal examination by the court but not under oath. The admissions of the debtor made at said informal and ex parte hearing disclosed conditions which constrained the court to enter an order withdrawing the reference to the conciliation commissioner and requiring the debtor to show cause as hereinbefore stated, and setting the matter for a formal hearing on September 8, 1937, notice being given to all scheduled creditors with opportunity to be heard. On September 8, 1937, the debtor appeared with new counsel from East Moline, Ill., and counsel for the Equitable Life Assurance Society, a mortgagee, and counsel for the First National Bank of Primghar, Iowa, a mortgagee, also appeared. And thereupon evidence was taken, counsel heard in argument, and time fixed for the filing of briefs. All briefs having since been filed and the matter now on this 27th day of November, 1937, stands fully submitted.

The debtor's petition, amended schedules, and the evidence taken on the hearing, disclosed the following facts: The debtor is a man 66 years old, married, and has a grown son. Most of his life he was a farmer, and for a good many years last past, prior to his removal to the city of East Moline, in the state of Illinois in the month of July, 1935, he resided upon a farm in O'Brien county, Iowa. The farm belonged to his mother until her death about 6 years ago.

At the time debtor's mother died she had equities in considerable real estate. A quarter section of land in O'Brien county, Iowa, described as the southwest quarter of section 5, in Dale township, O'Brien county, Iowa, encumbered by a first mortgage of $12,000, and a second mortgage of $4,000. On her death debtor's mother devised to the debtor a life use of this farm with fee to the debtor's son, subject to all of the above encumbrance. The $4,000 second mortgage was given by the mother to the debtor, who thereupon assigned it, together with the note, to the First National Bank of Primghar, Iowa, to secure an indebtedness of $7,000. The evidence shows that the $12,000, first mortgage, because of a good many years absence of interest payments, now aggregates between $11,000 and $12,000. Debtor

until his removal to Illinois, lived on this farm and farmed it, and has since operated as hereinafter explained, and held his interest in it at the time he filed his petition under section 75.

Some years before the filing of the petition in bankruptcy, the Equitable Life Assurance Society of New York, which held the first mortgage on said southwest quarter of section 5, instituted foreclosure proceedings, the mortgage having matured. The debtor took advantage of the various moratorium enactments of the Iowa Legislature, and a receiver was appointed who leased the farm back to the debtor on a rental of $5 per acre. The debtor has been farming that land in a peculiar way. He has a remnant of agricultural implements, including a tractor and a corn picker, and he hires a man by the day, at $2 per day, to plow the land and crop all the tillable land to corn, using a tractor for all purposes, and in the fall he hires help to pick the corn with the aid of the corn picker. He has no livestock and raises nothing but corn. No repairs have been put upon the buildings for a good many years, and they have become in appearance abandoned wrecks. The farm has become very foul with weeds, and is depreciating rapidly in value.

Debtor also had owned for a considerable number of years the northwest quarter of section 13 in said Dale township, encumbered by a mortgage of $15,000, and in his schedules estimates the value of the farm at $15,000.

The northwest quarter of section 13 in said Dale township, the debtor has not farmed personally for some years, but rents the same on shares to a tenant. Foreclosure of the mortgage on that quarter has not yet been instituted, the mortgage being held by the Federal Land Bank of Omaha, Neb.

Debtor's mother at her death also owned equities in three contiguous parcels of real estate in East Moline, Ill. These properties she willed to a married daughter, Goldie Rock. In July, 1935, the daughter died and debtor inherited a one-half interest in these East Moline properties, and the sister's surviving husband inherited the other half.

On one plot of ground, referred to by counsel as the Moline Mortgage Loan Company property, it being encumbered by mortgage for $15,000 to that company and which mortgage has been foreclosed, were

situated six buildings and one gasoline station. These six buildings are divided into 47 small apartments. Some apartments consist of 2 rooms, and some of 3.

On another plot, referred to by counsel as the Deere & Co. property, it being encumbered to that company for something over $11,000, were contained 3 separate houses which were divided into apartments. The mortgage on this property has also been foreclosed and is under receivership.

On the third parcel was situated one residence property of 14 rooms divided into 4 apartments, one of which apartments debtor occupies as his home. This property is mortgaged for $6,000, which is amortized by the Home Owners' Loan Corporation of Moline, Ill., at the rate of $47.50 per month.

The apartments contained in all of the foregoing buildings are usually let by the week on a semihotel operating plan, rentals paid weekly. Debtor in his first examination claimed the apartments were rented readily for from $5. to $7.50 per week, but on his second examination he changed his testimony radically, claiming rentals to average about $2.50 a week.

On the death of debtor's sister in July, 1935, debtor and his family moved from O'Brien county to East Moline, Ill., and entered into possession of the properties above described. As stated he acquired a one-half interest in such properties by inheritance from his sister. It was expected then that the properties would soon be taken by the mortgagees, and debtor's brother-in-law sold him his one-half interest in all of these properties for the sum of $500, $250 of which the debtor paid, and the balance has never been paid. The Moline Mortgage Loan Company and the Deere & Co. properties were under foreclosure, and a few months after debtor took possession receivers were appointed who have since managed those two properties, and the debtor and his wife have managed the home apartments.

The foreclosure proceedings in the Moline Mortgage Loan Company property and the Deere & Co. property had proceeded to decree and sale before the filing of the petition in bankrupcy, and the period for redemption under the Illinois law, Smith-Hurd Ill.Stats. c. 77, § 18, expired on the Moline Mortgage Loan Company property on April 17, 1937, and the period for redemption under the Illinois law expired on the Deere & Co. property on August 21, 1937, and deeds had issued to the purchaser, at least in the case of the Moline Mortgage Loan Company property, but the debtor was not sure whether the deed had issued in the case of the Deere & Company property. The deed or deeds issued under these foreclosures would both have issued, however, after the filing of the debtor's petition under section 75 of the Bankruptcy Act, possibly because the rule in the Seventh Circuit is that a bankruptcy court, taking jurisdiction after foreclosure sale and after the period of redemption has started to run, takes subject to the limitation of the period. The Circuit Court of Appeals of that circuit holding that in such cases the Congress under the Bankrupcy Act has no power to extend a period of redemption after it has started to run. In re Wright, 91 F.2d 894.

As indicated in the first paragraph of this opinion, the show cause order and the evidence taken at the hearing analytically considered present four material questions: (1) Is the debtor a farmer within the purview of the first clause of subsection (r) of section 75 of the Bankruptcy Act, as amended, 11 U.S.C.A. § 203 (r)? (2) Is debtor a farmer within the purview of the concluding clause of the definition embraced within said subsection? (3) Did the debtor file his original petition in good faith and in good faith submit reasonable and rational terms of composition or extension to his creditors? And, (4) Under the undisputed facts is there any reasonable and rational hope or prospect of debtor's financial rehabilitation through any lawful remedy afforded by section 75 of the Bankruptcy Act, as amended, 11 U.S.C.A. § 203?

The first clause of subsection (r) of section 75 provides: "The term 'farmer' includes not only an individual who is primarily bona fide personally engaged in producing products of the soil," then continues a description of other activities in which debtor in this case makes no pretense of being engaged. The debtor in this case resides permanently in the city of East Moline, Ill., and the evidence shows that substantially all of his time is devoted to activities other than producing products of the soil. So far as the East farm is concerned his status is that of a landlord without any qualifications. The case is not similar to First National Bank &

508

Trust Co. v. Beach, 301 U.S. 435, 57 S.Ct. 801, 804, 81 L.Ed. 1206, where the debtor resided upon the farm and personally devoted his labor to producing products of the soil and rented a part to others. Mr. Justice Cardozo in that case said: "The picture, however, is distorted if Beach is looked upon as a landlord with rentals unrelated to his primary vocation. His rentals like his labor smacked of the soil, and made him not less, but more a farmer than he would have been without them." In the case at bar the debtor's labor is primarily not devoted to the products of the soil. He does not live upon the land, but hundreds of miles away in another state. It is true that he causes the West farm to be operated by a hired man, but such operation is not in the usual course. The farm is not equipped in the ordinary manner with livestock. Crops are not rotated nor the products of the land diversified. Except for a period during the spring months and again in the fall no one devotes time to labor on the farm. The revenues the debtor receives from the West farm, over and above the rentals to retain possession, are not devoted to keeping up the farm nor to prevent depreciation, nor to the payment of interest, taxes, or insurance. The operation of the West farm by the debtor under his lease with the receiver is decidedly a "milking" process only.

■ I therefore conclude that the debtor is not an "individual who is primarily bona fide personally engaged in producing products of the soil."

The second question then arises: Is debtor one "the principal part of whose income is derived from any one or more" of the operations described in subsection (r) of section 75? The words, "foregoing operations" seem to be the crux of this matter. A careful reading of subsection (r) I think discloses that every operation enumerated to be engaged in by the individual is a personal operation. I therefore conclude that, by the same token which controls the conclusion under the first clause, the debtor is not one the principal part of whose income is derived from bona fide personal engagement in producing products of the soil.

■ An examination of the debtor's so-called offer of composition and extension to his creditors at the hearing before the conciliation commissioner, and consideration of the same in the light of all factors entering into his financial condition and prospect, constrain me to conclude that the debtor did not make his offer in good faith. As frankly admitted at the hearing, his only pretense was and has been that, if he could obtain control of these Moline properties and divert their revenues to the O'Brien county lands, he could reduce the charges thereon. He indicated no rational prospects of his ability to materially reduce or refinance the encumbrances on the O'Brien county lands.

I now come to the fourth question, Is there any rational hope or probability of debtor's financial rehabilitation through proceedings to be had under subsection (s)? A consideration of this question is best aided by considering the respective pieces of real estate separately in the light of their encumbrances.

The so-called West farm in section 5, O'Brien county, Iowa, is not owned absolutely by the debtor. The debtor only has a life estate or use of that farm, subject to its encumbrances. As stated, the first mortgage encumbrance now aggregates nearly $18,000. The second mortgage encumbrance, with the accumulated interest of about 6 years, would aggregate more than $6,000, thus bringing the total far beyond the present or prospective value of the farm. But there is the additional obstacle, that the debtor has no power to reencumber anything more than his life estate, and so far as the record shows, refinancing of this farm is impossible, and its administration under said subsection (s) would be absolutely impossible.

Recurring now to the East farm in section 13, we find it encumbered by a $15,000 mortgage, with its value estimated by the debtor in his schedules at the same amount. This farm has the additional potential charge in that the First National Bank of Primghar holds the debtor's personal obligation which now aggregates nearly $12,000, growing out of an original $7,000 indebtedness. The $4,000 collateral second mortgage would not of course liquidate that indebtedness, even if the West farm were sufficient in value to pay off that mortgage, or justify the bank in redeeming from the first mortgage. There would, therefore, be a very substantial sum enforceable against the East farm over and above the $15,000 mortgage.

■ From the foregoing it is perfectly evident that the O'Brien county lands would not liquidate their own encumbrances and the debtor's obligations to the First

National Bank of Primghar. Indeed, the debtor does not pretend to any ability to refinance the O'Brien county lands except through the instrumentality of the East Moline city property. His proposal is only that, if permitted through the instrumentality of the Frazier-Lemke Act to recapture possession and control of the Moline Mortgage Loan Company property and the Deere & Co. property, he will be able to collect rentals sufficient to reduce the encumbrance on the O'Brien county lands if permitted to divert the income from those properties to that end. The debtor does not seem to comprehend that a bankruptcy court, imbued with a sense of common honesty, would not permit him to take these properties from the purchasers at the foreclosure sales consummated before the bankruptcy proceedings were begun, and divert their use to the Iowa properties. (In this connection I lay aside the question of the constitutionality of such an act.)

When I consider these several parcels of real property, the encumbrances thereon, the slight interest that the debtor would have in the West farm in O'Brien county, the fact that the statutory period for redemption under the Illinois statute has long since expired on the two Moline properties, I entertain no doubt that there is no rational prospect or hope of debtor's financial rehabilitation under any benefits to be conferred by the Frazier-Lemke Law. Consideration of the entire record, including the debtor's radical change of front in his testimony upon the hearing under the show cause order, from the frank admissions to the court at his previous examination, leaves no doubt in my mind of the debtor's bad faith in invoking the Frazier-Lemke Act to obtain financial relief. I am constrained to believe that debtor's purpose and hope was only to retain possession of these properties and continue his present "milking" process.

I do not think that this is a case in which the debtor can receive any benefit from the administration of any of the property in question under subsection (s) of section 75 of the Bankruptcy Act, without invading the constitutional rights of the secured creditors in question, in any application of said subsection. I think the adjudication of the debtor should be vacated and his original petition and his petition under said subsection (s) dismissed, and it will be so ordered, reserving an exception to the debtor.