**In re JOYCE.**

**No. 6263.**

District Court, W. D. Louisiana,
Shreveport Division.

Jan. 8, 1941.

Cook, Cook & Egan and Albert T. Hughes, Jr., all of Shreveport, La., for Oil City Bank.

Charles B. Emery, of Shreveport, La., for debtor.

PORTERIE, District Judge.

This is a proceeding in which the debtor, Mrs. Sarah J. Joyce, seeks relief under Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203. The matter is before the court on a motion to dismiss filed by the Oil City Bank, the only scheduled creditor, holding special mortgage against the only item of property of the debtor. The basis of the motion to dismiss is that the debtor is not a farmer within the contemplation of the Act and more specifically under Section 75, sub. r, thereof, 11 U.S.C.A. 203, sub. r; the latter reading as follows: "For the purposes of this section * * * the term 'farmer' includes not only an individual who is primarily bona fide personally engaged in producing products of the soil, but also any individual who is primarily bona fide personally engaged in dairy farming, the production of poultry or livestock, or the production of poultry products or livestock products in their unmanufactured state, or the principal part of whose income is derived from any one or more of the foregoing operations, and includes the personal representative of a deceased farmer; and a farmer shall be deemed a resident of any county in which such operations occur."

There is alternative relief sought by the Oil City Bank which would require the debtor to proceed as provided by the Act in the event the motion to dismiss is not well founded.

The debtor, Mrs. Sarah J. Joyce, and her son, W. L. Joyce, were the only wit-

114

nesses. Mrs. Joyce is eighty-two years of age, lives in the town of Mooringsport, in Caddo parish, Louisiana, with her son, W. L. Joyce, his wife and two children. She has lived in this household for many years, even before the marriage of Mr. Joyce, her son. Joyce is engaged in farming operations. He rents 640 acres, approximately three miles east of Mooringsport, which he cultivates through tenants, and rents, also, the property of Mrs. Joyce, the 230 acres scheduled as an asset by her, located only a short distance west of Mooringsport.

Joyce was financed in his operations by Taylor & Howard, a mercantile firm located in some town in Harrison County, Texas. Joyce owns and maintains farming equipment, including a tractor, mules, plows, harrows and other implements. This equipment he used alternatively on the 640-acre tract and the 230-acre tract. In 1939 he gave a crop lien on the agricultural products to be derived during 1939 from both the 640-acre tract rented by him and the 230-acre tract belonging to his mother. During the years 1939 and 1940 he was participating in his own name in the agricultural program of the Federal government, making application for benefits under the provisions of the Soil Conservation and Domestic Allotment Act, 16 U.S.C.A. § 590a et seq., and payments were made to him during these years.

The debtor does not personally attend to the operation and control of her property in any respect. As she freely testified, she left everything to her son. There was no arrangement existing between them whereby she would directly benefit from the cultivation of her property. Her son never made any accounting to her for the yield of her property; it appears that she knew very little, if anything, about his operations and only made casual inquiry concerning them. Her son never made any specific contributions to her support other than maintaining her in his household and providing her with sustenance. Some five or six years ago he bore the expense of a trip taken by his mother to San Antonio, Texas, where she apparently once resided. Otherwise, the record is barren of any specific contributions or payments made by him to her, and the record merely shows that he provided her with food, clothing and shelter and the necessities of life.

The relation between the mother and her only son is a commendable one. They have been and are happy together. The mother is not impotent physically and has grace and good manners. It was admitted by her son that she has been a great help in the running of the home and in the care for and counsel of the children, from their very birth until now—some twenty years. It is but natural for debtor to have let her *only* child act entirely as if the property were his own. She never knew anything about the operation of the property and has not even gone on it for the last ten years.

The son borrowed money from the bank to buy a farm tractor in his own name; the mother gave a special mortgage on her property to secure, as an accommodation, her son's loan. The tractor is not an asset in this case.

Counsel for debtor very properly states in his brief that "having had the opportunity of seeing the debtor in person and appreciating her aged condition, it would be a manifest absurdity to expect the debtor to have personally tilled the soil and attended to her farming operations within the last ten years."

■ From these facts and premises, and under the jurisprudence, we must say Mrs. Joyce is not a farmer under the Act. She is not "primarily bona fide personally engaged in producing products of the soil."

The only part of the language of Section 75, sub. r, 11 U.S.C.A. 203, sub. r, under which it might be argued that she could be included, is: "or the principal part of whose income is derived from any one or more of the foregoing operations."

There is no reason for us to enter into a lengthy reasoning and to make detailed deductions in this case. The case of Shyvers v. Security-First Nat. Bank of Los Angeles, 9 Cir., 108 F.2d 611, 126 A.L.R. 674, writ of certiorari denied March 4, 1940, see 309 U.S. 668, 60 S.Ct. 608, 84 L. Ed. 1015, is definitive on the point that the debtor here, under the facts we have outlined, is not a "farmer." In the above case, the Beach case (First Nat. Bank & Trust Co. v. Beach, 301 U.S. 435, 57 S. Ct. 801, 81 L.Ed. 1206) is delimited as to its inferential holding; also, the case of In re Moser, 9 Cir., 95 F.2d 944, so much relied upon by debtor, is analyzed and shown to involve a debtor *personally* engaged in farming operations.

■ Finally, we quote liberally from the Shyvers case, supra, and let that language form the body of our opinion in this case (108 F.2d at 612, 613):

"Is appellant primarily personally engaged in farming? We think she is not. She argues that she is a farmer even though she does not personally plow the ground and plant the seed. We agree that the words 'bona fide primarily personally engaged' do not mean without any assistants. However, neither do they encompass an absentee landlord. Appellant's operations consist of collecting her rentals, rather than farming the soil.

"Next, it is necessary to consider whether or not the appellant is a 'farmer' under the second portion of the definition, as one 'the principal part of whose income is derived from any one or more of the foregoing operations.'

"It should be noted in particular that the Act does not define a farmer as one whose principal income is derived from farm properties; but the definition instead refers to 'the foregoing operations.'

"What are the 'foregoing operations'? An examination of the statute will disclose that each 'foregoing operation' is meticulously required to be a personal one. We conclude that to come within this subdivision, the debtor must personally be engaged in farming. It is not enough to own farm lands which he or she leases to others who operate them, while the debtor resides across seas. And this appears to be the very spirit of the law, which was enacted during a period of profound depression among the farmers of this country, the Act itself providing that it is one of emergency.

"Appellant argues that to give the subdivision this construction in effect nullifies the second part of the definition, to wit: 'or the principal part of whose income is derived from any one or more of the foregoing operations'. The argument is that anyone whose major income is derived from 'personal farming operations' would of necessity be a 'farmer' under the first part of the definition. It is urged that Congress must have intended by the second part just quoted to expand the class of persons who would be considered 'farmers' under the Act to apply to non-farming landlords deriving the major portion of their income from farm rentals. True, Congress must have intended the second part of the definition to enlarge the class over that specifically included in the first part of the definition. But it does not follow that it intended the enlarged class to include one who is not at all personally engaged in farming. Prior to the adoption of Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203, many courts had held that a person who carried on a business aside from his farm ceased to be a 'farmer'. We think that the purpose of the statute was to prevent these outside additional personal operations or pursuits from defeating a debtor's status as a 'farmer', provided the debtor's principal income continued to come from his personal farming operations.

"Great reliance is placed by appellant on the case of First National Bank & Trust Company v. Beach, 1937, 301 U.S. 435, 57 S.Ct. 801, 81 L.Ed. 1206. It is urged that the cited case is authority for the proposition that the second part of the definition of a 'farmer' includes a landlord in the position of appellant. We do not agree with this construction of the Beach case. We quote from the opinion of the Supreme Court (301 U.S. page 439, 57 S. Ct. page 803, 81 L.Ed. 1206):

"'1. Beach, the respondent, must be held, when the facts are viewed in combination, to have been "personally" and "primarily" engaged in farming operations. '* * * He was in direct or personal possession of forty-eight acres, one-fourth of the large farm which had been in his family for years. A substantial part of this acreage he cultivated with his own labor, or applied, again with his own labor, to other agricultural uses. * * * The critical fact is that the debtor worked an acreage large enough to count, that he did not work at anything else, and that he gave to this work, whether profitable or unprofitable, "the major portion of his time."'

"The court then went on to say that if Beach was a farmer because he cultivated a substantial farm, he did not step into another business by leasing other acres of the tract to tenants who were to use what they hired for grazing and other farming operations.

"We quote further from the Supreme Court's opinion in the Beach case (301 U. S. page 440, 57 S.Ct. page 804, 81 L.Ed. 1206): '3. The picture, however, is distorted if Beach is looked upon as a landlord with rentals unrelated to his primary vocation. * * * How the case would stand if he had been a merchant or a doc-

tor and had leased a tract of farming land to tenants, we do not have to say.'"

The motion to dismiss is sustained; proper judgment in the circumstances dismissing the application of Mrs. Joyce under the Bankruptcy Act, and setting aside any orders of this court restraining the action in any state court by the Oil City Bank against the debtor, will be signed upon presentation.