**In re LINDSAY et al.**
**No. 777.**

District Court, S. D. Texas,
Brownsville Division.

Sept. 26, 1941.

Harry L. Hall, of Edinburg, Tex., for farm debtors.

Birkhead, Beckmann, Stanard & Vance, of San Antonio, Tex., Patrick M. Kildea, of Washington, D. C., and Carter & Stiernberg, of Harlingen, Tex., for creditor R. F. C., in which creditor First National Bank, of Brownsville, Texas, joins.

ALLRED, District Judge.

Debtors filed their petition under Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203. The petition was referred to the then Conciliation Commissioner. His successor is disqualified, and by order of the Court and agreement of the parties, Hon. William Z. Rozan, Supervising Conciliation Commissioner, has acted upon the matters herein involved.

Two creditors, Reconstruction Finance Corporation and the First National Bank of Brownsville, Texas, moved before the Commissioner for dismissal of the proceedings on the ground that the debtors are not "farmers" within the meaning of the Act.

A hearing was had before the former Conciliation Commissioner, who found as a matter of fact and of law that the debtors were "farmers" within the meaning of the Act. Subsequently the Supervising Conciliation Commissioner reviewed the evidence. He has filed findings of fact and conclusions of law, together with a recommendation that creditors' motions to dismiss be overruled. The Supervising Conciliation Commissioner's findings of fact are

not challenged by creditors, but exceptions are taken to his conclusion of law that the facts show the debtors to be "farmers" within the meaning of the Act. The entire record has been reviewed by the Court and sustains the findings of fact made by the Supervising Conciliation Commissioner.

The debtor, R. W. Lindsay, owns and operates a citrus fruit farm in Hidalgo County, Texas, upon which he has also grown vegetables and cotton. He purchased some of these properties from creditor R. F. C. in January, 1937, and moved on the property in March of that year and commenced his farming operations. Since that time he has been working the farm for his livelihood and claiming it as his homestead.

Prior to the purchase of the farm lands, the debtor was engaged as an oil drilling operator and contractor for a period of several years, and was apparently highly successful. He and one Bolin had been partners in this business. They acquired valuable oil properties in Ward and Archer counties. At that time he personally gave up all his oil operations and has not since had any active control of his oil properties, but did retain an interest in the venture. The Ward County property and one lease in Archer County have been operated under contract by Bolin since 1937, and all the other property in Archer County was operated by Deep Oil Company under contract. The debtor approves the bills and charges for labor, equipment, etc., and forwards same to the Buffalo bank, which then pays the bills.

This property and the income therefrom was assigned over a year ago to a bank in Buffalo, New York, as security for an indebtedness some of which was already in existence against the property, which totals about $138,000. The bank gets all the income from the oil runs. By agreement, no expenditure in excess of $1,000 can be made on any of the oil properties without debtor's consent. The income from the oil properties has been discharging the indebtedness in monthly payments ranging from $2,500 to nearly $5,000.

Since moving on the farm in March, 1937, debtor has actively worked on the land and has managed it since late 1939, or early 1940. He has been primarily engaged in farming as his principal occupation continuously, producing not only citrus fruits from about 800 acres, but also corn, cotton, and vegetables from an additional 355 acres. In 1940 he produced carrots, tomatoes, peppers, cotton and corn, farming 160 acres of tomatoes, 20 acres of cantaloupes, 15 acres of cucumbers, 10 acres of beans, 40 acres of corn and 100 acres of cotton.

Debtor has never made a profit from his farming operations. He lost $65,454.83 in 1937, $39,926.34 in 1938, and $15,221.40 in 1939, resulting in a material reduction in losses each year. These losses were incurred largely because of the run-down condition of the orchards and the necessity for investing large sums of money in an effort to bring them to a high standard of productivity. As net losses from farming operations have decreased, sales and income from such operations have proportionately increased. Total sales from farming operations amounted to $15,848.88 in 1938, $38,292.94 in 1939, and for part of 1940 crop year $30,090.76.

The original purchase price of the farm lands, which debtor purchased from creditor R. F. C., was $106,000. This has been reduced to approximately $70,000. Part of this reduction was paid with money borrowed against the oil properties.

Debtor owned 65% of the stock in what is known as the Lindsay-Nile Corporation, organized for canning purposes. He was also director and president of the Lindsays Gardens Citrus Association, a sort of cooperative. He has received neither salary nor dividend from either activity.

During the period in question debtor was also engaging in the business of taking care of other people's orchards. The record does not disclose his earnings from this source but they were evidently slight.

On July 12, 1937, debtor executed a deed of trust to the State National Bank, Brownsville, Texas, which contained the following representation: "Grantor hereby expressly represents * * * as an inducement of the making of the loan secured by this deed of trust that his principal business is not farming; that he is not generally engaged in farming and that his principal business, in fact, is in drilling of crude oil, petroleum leases, and the sale of oil and petroleum land."

In his income tax returns for the three years in question debtor designated himself as a "citrus grower and oil operator."

The definition of a "farmer" set out in 11 U.S.C.A. § 203, sub. r, was not changed by the Chandler Act, Benitez Sampayo v. Bank of Nova Scotia, 313 U.S. 270, 61 S.Ct.

953, 85 L.Ed. 1324. That definition reads, as applicable to this case: "The term 'farmer' includes not only an individual who is primarily bona fide personally engaged in producing products of the soil, but also any individual * * * the principal part of whose income is derived from * * * the foregoing operations * * *."

■ Counsel devoted a great deal of their oral argument and briefs to a discussion of debtor's income; to the fact that gross income from the oil venture was greater than that from farming operations; and that the income from the latter source has proportionately increased. The question of income is, under the facts in this case, not controlling. Numerous decisions of the lower Federal Courts have been cited and discussed, but all of them must be interpreted in the light of the rules laid down in First National Bank v. Beach, 301 U.S. 435, 57 S.Ct. 801, 803, 81 L.Ed. 1206. The first question is: Was the Bankrupt a "farmer" because "primarily bona fide personally engaged in producing products of the soil"? First National Bank v. Beach, supra; In re Horner, 7 Cir., 104 F.2d 600. In every case the *totality* of the facts is to be considered and appraised, First Nat. Bank v. Beach, supra.

■ Reviewing the facts, the conclusion is inevitable that debtor was "primarily bona fide personally engaged in producing products of the soil." Having answered this question, there is no occasion to deal with the second, as to whether the principal part of his income is derived from such operations.

■ As pointed out by Judge Cardozo in First National Bank v. Beach, supra, the two definitions are not equivalent. "They were used by way of contrast. Occasions must have been in view when the receipt of income derived from farming operations would make a farmer out of some one who personally or primarily was engaged in different activities." But it can hardly be contended that receipt of greater income from other sources would prevent one from being a farmer who personally, primarily and bona fide engages in producing products of the soil. "A farmer remains a farmer * * * though the re-turns of his *investments,* while not enough to keep him going, are larger, none the less, than the profits of his labor," First Nat. Bank v. Beach, supra. (Italics supplied.)

In this case debtor lives on his farm, lives from its revenues, personally operates it on a large scale. He is not an "absentee" farmer.[1] The farm is, and has been for more than four years, his primary activity, not a mere sideline to some other more important, lucrative and time engaging occupation.[2] His oil interests are in the nature of an investment,[3] far removed, taking very little of his time and paying themselves out. They have helped him to carry on his farming activities, otherwise he could not have operated at a loss. He borrowed money against the oil investment from the Buffalo bank and paid it on the debt to complaining creditor, R. F. C.

■ No contention can be made that debtor went into farming to try to beat his debts. The obligations due both complaining creditors were incurred as a result of his farming activities. Both are in better position to ultimately collect because of the oil investment. Debtor's income from his farming operations is increasing, his losses diminishing. There is no question that he is primarily, personally and bona fide engaged in farming. This does not mean that 100% of his time must be spent in farming (although he has done almost that for four years); or that he must work the farm without assistance, or that he cannot engage in *secondary* activities. The "bona fides" of this debtor, who personally produces and directs the production of fruits, grains, vegetables and cotton from more than a thousand acres of land for over four years, who borrows money against his oil investment to pay on his land, who interests himself in cooperative farming associations rather than petroleum institutes, cannot be questioned.

■ The fact that debtor represented in the deed of trust given to another creditor, not here complaining, that he was not a farmer and designated himself as a citrus grower and oil operator in his income tax returns, is of no consequence. A layman's designation of his occupation cannot control the congressional definition which makes him a farmer.

---

[1] Compare Shyvers v. Security-First Nat. Bank, 9 Cir., 108 F.2d 611, 126 A. L.R. 674.

[2] Compare In re Chaney, D.C.Va., 39 F.Supp. 696.

[3] A farmer can make investments—even the leasing of a part of his farm lands may be an investment, First Nat. Bank v. Beach, supra.

Nor does his ownership of stock in the Lindsay-Nile corporation, or his activities as director and president of the citrus association, prevent his being a farmer. On the contrary, they evidence his interest in enterprises closely associated with his business of farming.

The recommendation of the Supervising Conciliation Commissioner will be adopted. Creditors' motions to dismiss will be overruled. Counsel for the debtor may prepare an order accordingly.