**In re BEECHWOOD.**

**No. 1238.**

**District Court, D. New Jersey.**

**Jan. 12, 1942.**

See, also, D.C., 36 F.Supp. 140.

Osborne, Cornish & Scheck and Emanuel P. Scheck, both of Newark, N.J., for petitioner.

J. Mercer Davis, of Camden, N.J., for John Jacob Beechwood.

FORMAN, District Judge.

An involuntary petition in bankruptcy was filed by the American Surety Company of New York against John Jacob Beechwood. He filed an answer denying the material allegations of the petition; that he was insolvent and that he had committed two acts of bankruptcy. He further asserted that he was immune from involuntary bankruptcy because he was a farmer within the meaning of the Bankruptcy Act.

Pursuant to his demand for a jury trial the issues as to his solvency and commission of acts of bankruptcy were submitted to a jury. It returned a special verdict that he was insolvent and had committed the acts of bankruptcy as alleged. The remaining issue as to whether or not he was a farmer within the meaning of the Bankruptcy Act has been argued upon the evidence taken at his trial and is for disposition herein.

The Bankruptcy Act protects farmers from involuntary bankruptcy in the following language: "b. *Any natural person, except a wage earner or farmer,* * * * owing debts to the amount of $1,000 or over, may be adjudged an involuntary bankrupt upon default or an impartial trial and shall be subject to the provisions and entitled to the benefits of this title. * * * The status of an alleged bankrupt as a wage earner or farmer shall be determined *as of the time of the commission of the act of bankruptcy.*" (Italics supplied.) 11 U.S.C.A. § 22, sub. b.

The statute further defines a "farmer" in the following terms: "(17) 'Farmer' shall mean an individual personally engaged in farming or tillage of the soil, and shall include an individual personally engaged in dairy farming or in the production of poultry, livestock, or poultry or livestock products in their unmanufactured state, if the principal part of his income is derived from any one or more of such operations." 11 U.S.C.A. § 1, Par. 17.

The petitioner submitted evidence to show that Beechwood was a member of the Bar of the State of New York and for 15 years had been employed by the Fidelity and Casualty Company of New York in New York City. At the time his connection with the company was severed he had arisen in his employment to be in charge of the department concerning itself with the payment of claims against it for liability upon bonds, etc. He had power to authorize the payment of drafts against his company for the adjustment of claims up to $5,000. This was a full time position entailing his attendance at the offices of his

company in New York City during the usual business hours of the usual business days. His salary was $7,200 annually. While he conducted no private law office, he performed private legal services outside of his usual employment which supplemented his income by from $2,000 to $3,000 annually.

On September 23, 1940, he confessed that he was implicated in having drawn or authorized the drawing and honoring of numerous drafts against his employer for false claims which aggregated a large sum of money, in excess of $100,000. His resignation was demanded and submitted on that day, retroactively effective as of September 16, 1940, the last preceding regular pay day.

On September 20, 1940, he conveyed, through the conventional conduit, to his wife, a farm in Burlington County, New Jersey, on which he and his family had been living for some time. It was this conveyance which the jury held to be made with intent to hinder, delay, or defraud his creditors, so as to constitute one of the acts of bankruptcy alleged in the petition. Hence the date, September 20, 1940, becomes of chief significance because it is adjudicated that he committed an act of bankruptcy on it, and the statute fixes the date of the act of bankruptcy as the time when the alleged bankrupt must show that he was a farmer in order to claim his immunity from involuntary bankruptcy.

Beechwood submitted that the acreage in question was conducted as a farm, crops were grown, milk produced, cattle raised, and other agricultural activities were maintained. These were in charge of a practical farmer, employed by Beechwood, who lived with his family on the place. Beechwood indulged in this occupation while employed by his company on Saturday afternoons, Sundays, and in his leisure time, and after a time subsequent to the severance of his connection with the company he devoted all of his effort to work on the farm. He calculated that his agricultural enterprises had netted him as much as $2,500 in a year. Indeed, there is no controversy that the place on which Beechwood resided was actually a farm and devoted to agricultural pursuits. He contends that on September 20, 1940 (the day on which he has been adjudged to have committed an act of bankruptcy) he was a farmer within the meaning of the statute and in fact reverted to this status on September 16, 1940, the date upon which his resignation from the Fidelity and Casualty Company became retroactively effective.

He cites for support of his contention the cases of Flickinger v. First National Bank of Vandalia, Illinois et al., 6 Cir., 145 F. 162, and First National Bank & Trust Co. v. Beach, 301 U.S. 435, 57 S.Ct. 801, 81 L. Ed. 1206.[1] In the former case the alleged bankrupt was held to be a manufacturer and a farmer until the day when he divested himself of his manufacturing business and from then on the court held that farming became his only occupation. In the latter case, despite the fact that the alleged bankrupt rented three-fourths of his acreage to others, he was held to be a farmer within the meaning of the Act.

It was shown that Beechwood arranged the conveyance of his farm to his wife on the night of Friday, September 20, 1940. On Saturday and Sunday, September 21st and 22d, he had conferences concerning the course of his troubles with his family and on Monday, September 23, 1940, he went to New York City for the purpose of making a "clean breast" of his manipulations of his employer's funds. This occurred in an all day and most of the night session with officers of his employer during which time he gave the resignation heretofore mentioned, effective as of the foregoing September 16, 1940. After that he had frequent occasion to be in New York City in an endeavor to salvage his extra-mural venture, which had taken the form of purchasing, together with others, a steamship which they expected to recondition and sell at a profit. He also had under way negotiations for the sale of material to the purchasing agency of a foreign government. His time was likewise occupied in meeting the criminal charges brought against him and in conference with his attorneys. As a matter of fact, on October 10, 1940, he conveyed his interest in his right to the stock of the corporation organized for the purpose of owning the vessel referred to above to an attorney. This conveyance was similarly adjudicated by the jury an act of bankruptcy. Unquestionably, after such

---

[1] See, also, Noble et ux. v. Hopewell National Bank et al., 98 F.2d 623, for a definition of a "farmer" under the Bankruptcy Act by the Third Circuit Court of Appeals.

activities died down and as the fall of 1940 progressed, he occupied himself in the duties of the farm on which he lived.

Formerly the Bankruptcy Act limited the immunity granted to farmers against involuntary bankruptcy to those who were persons "engaged chiefly in farming or the tillage of the soil." 11 U.S.C.A. § 22, sub. b. Since the amendment of 1938 the definition of a farmer has been constricted. It now requires him to be "an individual personally engaged in farming or tillage of the soil * * * if the principal part of his income is derived from any one or more of such operations"; and it fixed the time for the test of his status to be "the time of the commission of the act of bankruptcy." (supra.)

On September 20, 1940, and on October 10, 1940, Beechwood had resided on the farm which was an incident to his manner of living. On these days he was a lawyer and a dislocated business man working to extricate himself from the burden of the losses that he had inflicted upon himself and his employer, or at least to put himself in the best light possible by mitigating the damage, or place himself in a position to make other amends with which to repair the loss he had inflicted. In no sense could he be held to be one who was personally wresting from the soil or its allied agricultural elements the principal part of his income. Up to that time by far the principal part of his income was derived from his employment by the Fidelity and Casualty Company and his occupation was that of a lawyer and business man who resided upon a farm, which claimed his avocational interest.

The cases he cites fail to support his arguments. The facts of the case of Flickinger v. First National Bank of Vandalia, Illinois, supra, are not analogous to his. In the case of First National Bank & Trust Co. v. Beach, supra [301 U.S. 435, 57 S.Ct. 803, 81 L.Ed. 1206], the court emphasized the personal character of the involvement of the alleged bankrupt in his pursuit of a living solely from the soil or other agricultural elements when it said:

"* * * He was in direct or personal possession of forty-eight acres, one-fourth of the large farm which had been in his family for years. A substantial part of this acreage he cultivated with his own labor, or applied, again with his own labor, to other agricultural uses. He did this, not for diversion or only in spare hours, but as an engrossing occupation, consuming in the words of the stipulation, 'the major portion of his time.' The products of his toil were food for him and his dependents, and the farmhouse was a home. True, the money returns were scanty. To some extent this was so because of the blight which fell upon his apple orchard in 1932 or later, cutting down the revenues yielded from that source. The scantiness of the yield may have turned him into a bankrupt, but it did not change his occupation. One does not cease to be a farmer because drought or wind or pest may have rendered the farm barren. The critical fact is that the debtor worked an acreage large enough to count, that he did not work at anything else, and that he gave to this work, whether profitable or unprofitable, 'the major portion of his time.'"

Beechwood does not meet this criterion established by the Supreme Court prior to the amendment of 1938. Even less so does he meet it in the face of the present law.

■■■■ The exceptional benefits provided for farmers under the Bankruptcy Act were designed for the protection of those who in good faith seek their livelihood from the soil. Such workers engage in a totally essential employment beset by many economic risks and hazards and when personally engaged, even under most advantageous conditions, are required to exert themselves with utmost vigor for most modest returns. None but those for whom the statutory privilege was created should be permitted to insinuate themselves into the class. To hold Beechwood a member thereof would be to encourage business men and lawyers in like situations to equip themselves with rural surroundings to escape the normal remedies of their creditors. His defense, to the petition, that he is a farmer within the meaning of the Bankruptcy Act, has failed.

The other issues having been resolved against him by the verdict of the jury, an order adjudicating him as a bankrupt should be entered.