**In re MULLIGAN.**
No. 3495.

District Court, D. Nebraska, Lincoln Division.

June 29, 1942.

Kenneth S. Wherry, of Pawnee City, Neb., and G. E. Price, of Lincoln, Neb., for the debtor.

William W. Graham, of Omaha, Neb., for secured creditors.

DELEHANT, District Judge.

This is a proceeding for relief under Section 75 of the Bankruptcy Act, 11 U.S. C.A. §203.

Anna D. Mulligan, the present debtor, is the same person who prosecuted the proceeding in Case No. 3332 in this court, No. 12,187, in the United States Circuit Court of Appeals, Eighth Circuit, in which the opinion of the Circuit Court was filed on April 9, 1942. Mulligan v. Federal Land Bank of Omaha, 129 F.2d 438. That proceeding was finally terminated through the affirmance by the Circuit Court of the decree of this court, the Honorable Thomas C. Munger presiding, dismissing the action for want of jurisdiction on the ground that the debtor was not a farmer within the true intent and meaning of the act.

Because the former case is pertinent here, beyond its provision of an abstract test by which a petitioning debtor's status as a farmer may be measured, its history may properly be set down.

Case No. 3332 was filed June 4, 1940. The proceedings under Sec. 75, subs. a to r, consumed the time thereafter until January 8, 1941, when the debtor's amended petition under Sec. 75, sub. s, was filed and an order of adjudication and reference was entered. First meeting of creditors within the altered status of the trust was held, and on May 12, 1941 an order of the conciliation commissioner fixing rents during the statutory stay period was filed. On the same day The Federal Land Bank of Omaha and Federal Farm Mortgage Corporation, hereinafter designated as "the creditors" filed a petition to dismiss the proceeding on the ground that the debtor was not a farmer. Objections to that petition were filed by the debtor on May 31, 1941. The matter was then, by this court, referred to the official supervising conciliation commissioner of the district as master for hearing and report. Hearing was held before the master, who, on July 21, 1941, made an exhaustive report to the court finding that the debtor was not a farmer within the statutory definition of that term, but recommending the denial of the motion to dismiss upon the grounds, (a) that the negation of the debtor's status as a farmer did not oust the court's jurisdiction and, (b) that the creditors had "been guilty of undue delay and laches" in presenting the issue. Objections to the conclusions upon the questions of jurisdiction and laches were filed by the creditors on August 12, 1941. Hearing was had thereon and this court sustained the factual finding adverse to the debtor's status as a farmer, reversed the conclusions upon the court's jurisdiction and laches, and dismissed the proceeding. Affirmance by the Circuit Court followed.

On May 11, 1942, thirty-two days after the Circuit Court's ruling, the debtor filed her petition and schedules in this proceeding. The new file thus made was, by the court, immediately referred informally to the Supervising Conciliation Commissioner for preliminary examination into its formal regularity. Before he had returned the file to the court with his advice, and on May 21, 1942, the creditors filed a petition to dismiss, first, because there is no essential factual difference between the two cases and the debtor is not a farmer within the meaning of the act; secondly, because in the former proceeding the debtor secured and enjoyed all of the rights allowed to her under the Frazier-Lemke amendment and is not entitled to like relief in this case, and finally because the present action is not prosecuted in good faith by the debtor. These grounds are asserted in part in an amendment to petition to dismiss filed by the creditors on June 11, 1942.

■ The court does not consider that the creditors' second ground for dismissal is well founded either in fact or in law. True, the debtor, in the former proceeding actually had both the time and opportunity for negotiation of the adjustments contemplated in Sec. 75, subs. a to r, in which she was unsuccessful, and the stay of proceedings included therein. And an order was actually made in that case adjudicating her a bankrupt within the contemplation of Sec. 75, sub. s. But that adjudication was rendered abortive by the dismissal of the action, upon the premise of a want of jurisdiction. So, while the creditors may have been balked by the former proceeding in their efforts, outside this court, to collect their debts, the debtor certainly did not receive in this court the full measure of indulgence contemplated by the law and now sought by her.

■ The petitioner's final charge of bad faith is considered by the court to be sustained only if, and to the extent that, the debtor is held not to be a farmer. If she be granted as a farmer the hospitality of the court, it is impossible to understand how she is affected with bad faith in availing herself of it. Even if this be regarded as an instance of the filing of successive petitions under the amendment, it is not, on that account alone, tainted with bad faith. Howell v. Federal Land Bank of Spokane, 9 Cir., 92 F.2d 703; In re Kalb, 7 Cir., 127 F.2d 509. But it can not be so regarded. If the debtor is considered now to be a farmer within the contemplation of the law, then this will strictly be her first legal and valid recourse to this court. The court was utterly without jurisdiction in the former action. In re Anna D. Mulligan, supra. But the court does consider the element of bad faith in relation to the status as a farmer of the debtor; and, holding that she is still not a farmer, concludes also that the present action is not prosecuted in good faith. In re Ripley, D.C., 40 F.Supp. 850.

■ Surely, the ruling of this court upon the status of the debtor in the former action and its affirmance by the Circuit Court must be regarded as settling finally and adverse-

ly to the debtor for the purposes of the court's jurisdiction under Sec. 75, the question whether she was a farmer under the facts as they actually existed when she presented to this court her first petition for relief. The propriety of that ruling might have been scrutinized by the Supreme Court upon petition for certiorari which was not presented; but it can not presently be relitigated here.

Recognizing the foregoing premise, counsel for the debtor claim that there have been intervening changes of conditions in consequence of which the debtor is now a farmer. Her counsel also urge that alleged improved economic conditions and crop and market prospects and alteration in the debtor's financial status will now sustain the court's jurisdiction. With the latter suggestion concretely applied to this case the court can not agree. Improved or altered financial status of a debtor has been relied upon in some cases to support the entertainment by the court of a second petition for relief. In re Kalb, supra. But the issue here is the narrow one of the occupational status of the debtor.

Touching that question, the court is fully satisfied from the evidence before it that two conclusions must be reached; first that there has been no actual change in the status of the debtor since the institution of case No. 3332; and secondly, that the debtor is not a farmer within the reasonable definition of the law.

Sec. 75, sub. r now provides: "For the purposes of this section and section 4(b) [22(b)] the term 'farmer' includes not only an individual who is primarily bona fide personally engaged in producing products of the soil, but also any individual who is primarily bona fide personally engaged in dairy farming, the production of poultry or livestock, or the production of poultry products or livestock products in their unmanufactured state, or the principal part of whose income is derived from any one or more of the foregoing operations."

In First National Bank & Trust Co. v. Beach, 301 U.S. 435, 57 S.Ct. 801, 803, 81 L.Ed. 1206, the Supreme Court, speaking through Mr. Justice Cardozo, declared that in determining a petitioning debtor's status by the definition of a farmer in the amendment "in every case the totality of the facts is to be considered and appraised." In that case it was indeed said that where a debtor "was a farmer because he cultivated a substantial farm, he did not step into another business by leasing other acres of the tract to tenants who were to use what they hired for grazing or cultivation and other farming operations." But there the status of the farmer was fixed by his actual cultivation of a substantial portion of his land on which he had lived throughout his entire life and his family had lived for two centuries, and his utilization of the products of that part of his land partly for his family's consumption but also for sale to the general commercial trade.

This court and the Circuit Court in the former ruling on Mrs. Mulligan's status considered that the facts respecting the debtor, Beach, were not comparable to those determining Mrs. Mulligan's status; and the writer of this opinion is persuaded that the distinction, then valid, still persists.

The petition and schedules in this case are precisely identical with like pleadings in the former case, except that the debtor now recites that she is a resident of Pawnee County, Nebraska, where her farm is located, whereas in the earlier case she said she was a resident of Box Butte County, Nebraska. The same land with the same valuation, and household goods at the same appraisal, are scheduled as her assets. The same creditors (including only the creditors above named) with exactly the same debt (save for accumulated interest) and even the same amount of taxes are scheduled as liabilities.

The farm is, and through the period involved in both cases has been, rented to tenants who farm it and pay rent in both grain and cash for its use. The written leases under which the tenants have farmed and are farming it are before the court. The one for 1938 under which the tenant evidently held over for 1939 and 1940, and the one for 1942, made incidentally on February 14, 1942 and effective from March 1, 1942 to March 1, 1943 differ only in the specification of the kind of crops out of which share rental arises and the computation of cash rent. The current lease provides for the payment, by the tenants to Mrs. Mulligan as rental, of one-half of all corn and two-fifths of all small grain raised on the farm and $185 in cash for pasture and hayland. Absolutely nothing upon the farm, either land or improvements or any part thereof, is reserved from the operation of the lease.

The 1941 lease bears intrinsic evidence of a deceptive purpose in its terms. The debtor and her tenant for that year, one Frank H. Oenbring, signed it, on April 14, 1941, when the issues in the former case were maturing. Made upon a printed lease form identical with the one used later for the 1942 lease with the blank spaces appropriately supplied in type, it contains every provision common in a standard Nebraska farm lease creating the relations of landlord and tenant. But into a blank space in the form is inserted the following language:

"Anna D. Mulligan, party of the first part, hereby employs Frank H. Oenbring, party of the second part to farm above described premises and in payment of his labor in farming the above described premises the party of first part agrees to pay party of the second part as follows: One-half (½) of the corn in the crib on the farm; one-half (½) of all hay in the stack on the farm. Party of second part hereby agrees to pay party of the second" (mistakenly inserted for first) "part $50.00 in payment of about 45 acres of pasture land on above described pasture land. The same is put in a note at even date due first day of October and made a part of this contract. Receipt for said note is hereby acknowledged by party of first part."

Now, penetrating through the transparent attempt at circumvention, and appraising the other standard leasing terms of the instrument, that contract is a farm lease at the regular and prevailing rental terms, and nothing else.

During the hearing before this court upon which this memorandum is based, and before these leases had been produced from the files of the creditors, Joe Mulligan, the debtor's husband, testifying in her behalf, had asserted that the arrangement in 1941 with the man who farmed the place was purely one of hiring and that the man was paid fifty cents per acre for each time he "went over," that is to say, cultivated, the farm land. Likewise, also before the exhibition of the leases, the debtor testified that in 1941 she and Mr. Mulligan farmed the land with hired help. And she also testified that they have a like arrangement with the man who is living on the place now. With significant lack of candor, testifying before this court on June 19, 1942, at the busiest season of the farm year, she also asserted that at the time of her testimony she and her husband were temporarily absent from the farm and staying in the city of Lincoln, where Mr. Mulligan was working as a laborer, and that they were not then needed on the farm because the work was not busy there and they proposed to return when the corn is to be harvested; testimony which, besides its intrinsic incredibility, has the further handicap of documentary refutation by the written lease covering the period. For the current year Mr. Mulligan's testimony was more frank. He referred to the tenant as "tenant" and spoke of the tenant's undertaking as one involving his payment for the use of the land.

During 1941, the Mulligans evidently spent the greater part of the year residing in the house on the farm which Frank H. Oenbring, the tenant, did not use or need, since he resided elsewhere in the community. They appear to have had a garden for their personal use and a few chickens on the farm. During the elapsed portion of 1942, the Mulligans state that they continued to live in the house until their removal to Lincoln so that Mr. Mulligan might seek work. Upon the date of such removal Mrs. Mulligan was not clear in her testimony. Her husband placed it at "two or three weeks ago" when he testified on June 19, 1942, but indicated that he had actually been working in Lincoln for "three or four weeks", testifying further on June 22, 1942.

The Mulligans' household furniture is now in two rooms in the dwelling house on the farm which, they testify, they have reserved for their use, though no such reservation is disclosed in the lease, and they have "a few chickens" on the place. They have no other livestock and, apart from one or two casual items, no farm implements. The facts in these respects have not changed since February, 1938, save for the general occupancy of the house by the Mulligans in 1941 and early in 1942, until the assumption of the possession of the premises by the tenant, the precise date of which is not disclosed in the testimony. Touching this factual continuity, the following quotation from a typewritten brief filed in this court in the former proceeding on January 20, 1941 by counsel for the debtor is convincing: "The debtor left some of her property on the farm. She never moved her furniture. The husband, Joe Mulligan, stated that he came back each summer and fall, helping to till the land and helping to harvest the crop. They

left their chickens on the farm and the testimony is that the debtor's husband spent many days fixing fences and carrying on the work of rehabilitating the farm." The conciliation commissioner's factual report as master in case No. 3332 reflects a like situation. And these facts were pleaded by the debtor in case No. 3332 in her objections to the petition to dismiss. Mulligan in this case, too, testified that he did work on the farm in the way of repairing the fences and improvements and conserving soil. There is no testimony that he did any work incident to crop production in 1942. His testimony as to such work in 1941 is vague, uncertain and unconvincing, though it may reasonably be inferred that he may have performed some slight and purely casual service in crop production during that year. A neighbor testified that on one occasion in 1941 he saw Mulligan assisting in the replanting by hand and with a hoe, of corn that had been washed out by rains.

It is certain that the Mulligans were formerly farmers, the debtor owning the farm and her husband operating it. But they abandoned that situation shortly before, or early in 1938, since when Mrs. Mulligan's relation towards the farm has been that of a lessor. For four years and thus far in 1942, her husband, accompanied by her, has proceeded from place to place in Nebraska including Alliance, Hemingford, some farms and ranches in Box Butte County, and now for three or four weeks Lincoln, working in casual employment in an effort to earn a living which the rentals from the farm have failed to provide. In seasons when he was not working he has spent considerable time living and doing maintenance and repair work on the farm. They were at Alliance in 1940 when the debtor filed the earlier of her proceedings for relief in this court. They were on the farm when this proceeding was filed, but not as farmers, and shortly thereafter removed for the time being to Lincoln.

▮ If it be contended that the court is confronted with the necessity of determining whether the debtor is a farmer, as one, "the principal part of whose income is derived from any one or more of the * * * operations" enumerated in Sec. 75, sub. r, let it be answered that the testimony before the court fails to sustain the burden of proof upon that issue which, being jurisdictional, necessarily rests upon the debtor. Nor is the point effectively made in the presentation of the case to the court.

The foregoing analysis of the testimony before the court is presented at otherwise indefensible length, first, in order to reflect the available "totality of facts" emphasized by Mr. Justice Cardozo in First National Bank & Trust Co. v. Beach, supra, and secondly, to emphasize the essential factual continuity from the inception of case No. 3332 to now.

Upon the basis of the facts of the two cases, including the written leases now before the court, the conclusion has been reached that, no actual change in occupational status has been achieved by the debtor since she instituted case No. 3332, and therefore the ruling in that case is decisive here and it would be a clear abuse of judicial discretion for this court to attempt to retain jurisdiction over the debtor and her property in the present case.

But, even independently of the issue of prior adjudication between the same parties of the same facts and the same issues, the court is satisfied that under the accepted tests and definitions and within the terms of Sec. 75, sub. r, the debtor is not a farmer, and, therefore, is not entitled to the privileges of the Frazier-Lemke amendment. Without resting too heavily on technicalities, it may appropriately be repeated that she has the burden of proof upon the issue of her status for jurisdictional purposes. She has failed to sustain that burden.

And, thus failing, and in consequence of her whole relation to her land and its employment, her ambiguous contract in 1941, and her and her husband's bearing and want of candor in their testimony before this court, the court considers that her presentation of her petition for relief in this case is tainted with bad faith.

An order will therefore be entered sustaining the creditors' motion to dismiss and dismissing this proceeding. Let counsel for the creditors forthwith prepare findings of fact and conclusions of law and an order or judgment of dismissal in harmony with this memorandum and submit the same to counsel for the debtor for approval as to form, and then to the court for signature; or in the event of failure of counsel to agree, then upon notice, to the court for settlement.