**CHANEY v. STOVER.**

**In re CHANEY.**

No. 4861.

Circuit Court of Appeals, Fourth Circuit.

Dec. 9, 1941.

Joseph I. Nachman, of Staunton, Va., for appellant.

J. M. Perry and Richard C. Peyton, both of Staunton, Va. (L. W. H. Peyton, of Staunton, Va., on the brief), for appellee.

Before PARKER and SOPER, Circuit Judges, and CHESNUT, District Judge.

SOPER, Circuit Judge.

Mary V. Chaney filed a petition in the District Court to avail herself as a farmer of the provisions of Section 75 of the National Bankruptcy Act, 11 U.S.C.A. § 203, in order to effect a composition or an extension of time to pay her debts. She failed, however, to obtain acceptance of the proposed settlement by a majority in number and amount of her creditors because of the objection of a creditor whose debt, secured by mortgage on her farm, was far greater than the remainder of her total indebtedness. Thereupon she filed a petition under Section 75, sub. s, asking to be adjudged a bankrupt, and the same creditor filed an objection alleging that she was not entitled to the benefits of that section since she was not a farmer within the definition of the statute. This issue of fact was referred to a Conciliation Commissioner who found that the petitioner was not a farmer, and this finding was confirmed by the District Judge.

This issue presents the sole question to be decided. The petitioner purchased the farm, consisting of 134 acres, in 1915. Of this acreage, 30 acres were not tillable and 40 were in pasture. From 1915 to October, 1937, when she was dispossessed by proceedings in a creditor's suit in the State court, she farmed the land personally, doing much of the work that is ordinarily performed by a man. For several years prior to 1937 she derived some income from the operation of a cave on the property. When she was dispossessed, she rented a neighboring farm and engaged there in farming until August, 1939, when the State court set aside the sale of her farm and she regained possession. Since that date her activities have been confined to her own property.

It is not disputed that the petitioner conducted operations on the farm after she regained possession in August, 1939. She was at that time separated from her husband, a railroad conductor, and was living on the farm with a son who assisted her to some extent. During the latter part of 1939, some grain was sown and on July

21, 1940, when the first petition was filed, 41 bushels of wheat, 126 bushels of rye and 30 bushels of barley were in straw on the land and were subsequently thrashed. In 1940 corn also was grown upon a five acre field. The grain above mentioned was not sold but was fed to live stock on the place, which consisted of three good work horses, six cows and three young male animals of a good breed. The farm was equipped with machinery necessary to its operation.

Neighbors testified to their personal knowledge of the fact that the petitioner actually did the farm work, and a supervisor of the Department of Agriculture in the Soil Conservation Division, who visited the farm in the course of his duties, ascertained to his satisfaction that Mrs. Chaney was the operator of the farm, and as such, qualified to accompany him in order to determine whether the farm was being run in accordance with the farm program of the government. Mrs. Chaney testified that she raised and peddled vegetables in the summer, and also sold hogs, dressed chickens, turkeys, geese and milk.

We think that this evidence, indicating that the petitioner had engaged in the business of a farmer for many years before she filed her petition, satisfied the definition of a farmer contained in Section 75, sub. r, that the term includes not only an individual who is primarily bona fide personally engaged in producing products of the soil, but also any individual who is primarily bona fide personally engaged in dairy farming or products of poultry or live stock, or the principal part of whose income is derived from any one or more of the foregoing operations. While the activities of the petitioner at the time of the filing of the petition were undoubtedly on a small scale, she was still engaged in the business which she had pursued for the previous twenty-five years; and as said of the bankrupt in First National Bank & Trust v. Beach, 301 U.S. 435, 57 S.Ct. 801, 81 L.Ed. 1206, she was engaged in that business, or in none. The decisions in other circuits in similar cases support this conclusion. Hamburg Bank v. Kitchens, 8 Cir., 116 F.2d 377; In re Horner, 7 Cir., 104 F.2d 600; In re Moser, 9 Cir., 95 F. 2d 944.

The decision of the District Court was doubtless influenced by the fact that the petitioner had made persistent efforts to escape the payment of her debts, and especially to avoid the sale of her property for the satisfaction of the mortgage indebtedness which was heavily in arrears; and by the further fact that her testimony before the Conciliation Commissioner was evasive rather than full and frank. Thus, the District Court gave little if any weight to the availability of suitable live stock and machinery for the operation of the farm, because the petitioner's schedules in bankruptcy showed that she owned no farming stock or instruments of husbandry, and because she testified that on February 25, 1937, while the creditor's proceeding in the State court was in progress, she sold all the stock and equipment for $100 to a son who did not live upon the farm. Her testimony was evasive as to the share taken by this son in financing the operations of the farm, for while she said that he was paying her a large price, she could not or would not divulge the amount. Equally unsatisfactory to the District Court was the testimony of the petitioner as to the financial assistance which she received from her husband and her children. There was no evidence that these contributions were substantial, but she gave the impression to the court that perhaps they were her means of livelihood.

These considerations were insufficient in our judgment to offset the affirmative showing of farming activity. Taken at its worst, the evidence indicated that the transfer of the stock and machinery was not a bona fide transaction, and that they still belonged to the petitioner. It is certain that she continued to use them in the operation of the farm. Under the binding decisions, the petition of a farmer for an adjudication in bankruptcy under the terms of Section 75, sub. s may not be dismissed on the ground that it does not appear he has made a bona fide effort to settle with his creditors. It was first supposed by reason of certain expressions in the opinion of the Supreme Court in Wright v. Vinton Branch, 300 U.S. 440, 462, 57 S.Ct. 556, 81 L.Ed. 736, 112 A.L.R. 1455, that under Section 75 the debtor was required to show good faith in the initiation of proceedings to effect a composition under Section 75, subs. a–r, and that relief under Section 75, sub. s, might be obtained only by one who had made a bona fide but unsuccessful attempt to effect a composition under the previous subsections. See Steverson v. Clark, 4 Cir., 86 F.2d 330; Knotts v. First Carolinas Joint Stock Land Bank, 4 Cir., 86 F.2d

551; Massey v. Farmers & Merchants Nat. Bank & Trust Co., 4 Cir., 94 F.2d 526; Iden v. New York Life Ins. Co., 4 Cir., 107 F.2d 695. But, it was later held in John Hancock Mut. Life Ins. Co. v. Bartels, 308 U.S. 180, 60 S.Ct. 221, 84 L.Ed. 176, that what was said in this respect in the prior decision was not essential to the opinion in that case, and was not supported by the terms of the statute. We think, therefore, that the issue in the pending appeal must be decided on the testimony as to whether or not the petitioner was a farmer within the meaning of the act, and that the court must proceed in the further administration of the proceedings in accordance with the terms of Section 75, sub. s, with discretion, however, to take such action for the protection of the creditors as is authorized by the terms of the statute.

Reversed and remanded.