**FEDERAL LAND BANK OF OMAHA et al.
v. WOOD.**

No. 12235.

Circuit Court of Appeals, Eighth Circuit.

July 10, 1942.

Wm. W. Graham, of Omaha, Neb. (C. A. Sorensen, of Lincoln, Neb., J. C. Pryor, of Burlington, Iowa, and Harold J. Reed, of Omaha, Neb., on the brief), for appellant Federal Land Bank of Omaha.

C. A. Sorensen, of Lincoln, Neb. (Wm. W. Graham, of Omaha, Neb., J. C. Pryor, of Burlington, Iowa, and Harold J. Reed,

of Omaha, Neb., on the brief), for appellant Lincoln Joint Stock Land Bank of Lincoln, Neb.

William Lemke, of Washington, D. C. (George B. Clark, of Chambers, Neb., and M. O. Cunningham, of Omaha, Neb., on the brief), for appellee.

Before GARDNER, WOODROUGH, and JOHNSEN, Circuit Judges.

GARDNER, Circuit Judge.

The substantial question presented by this record is whether the appellee, who filed a petition under Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203, for the composition or extension of her debts, is or was a farmer within the purview of that Act. Appellee, in her petition, schedules large farm land holdings as owned by her, consisting of 1,760 acres of land in Holt County, Nebraska, 475 acres of land in Greene and Carroll Counties, Iowa, 58 acres of land in Harrison County, Iowa, besides certain residence property in Chattanooga, Tennessee. She acquired title to the lands in Nebraska and Iowa subject to mortgages held by appellants. She listed personal property consisting of household goods valued at $300, but listed no farm machinery, implements, tools, livestock, or farm products. The proceeding was referred to the Conciliation Commissioner in Holt County, Nebraska, who after hearing testimony submitted on behalf of petitioner recommended that the proceeding be dismissed on the ground that appellee was not a farmer within the meaning of the Bankruptcy Act. Appellants having each filed a motion to dismiss the proceeding, the District Court referred the matter to Herman Aye, Supervising Conciliation Commissioner, for the purpose of hearing evidence and determining the facts and law regarding the status of the debtor. The debtor appeared personally and by counsel before the Commissioner, was a witness in her own behalf, and the testimony theretofore taken at the first meeting of creditors was resubmitted. Appellants appeared at this hearing and again entered motions for dismissal.

The Commissioner filed his report in which he found that the debtor was not a farmer within the purview of Section 75, sub. r of the Bankruptcy Act, and recommended that the proceeding be dismissed on that ground. Exceptions and objections to this report were filed by the debtor and the matter was submitted to the court. Thereafter the court filed its decision overruling

the findings and conclusions of the Commissioner, and finding the debtor to be a farmer, entered an order denying appellants' motions to dismiss the proceeding. From this order and judgment appellants prosecute this appeal.

The debtor acquired title to the lands in question from her sister, Mrs. Norton, between the years 1932 and 1935. The land in Greene and Carroll Counties, Iowa, was encumbered by a mortgage to appellant Lincoln Joint Stock Land Bank for approximately $50,000, which was under foreclosure, and possession of the land was in a receiver appointed by the State Court. The 58-acre tract of land in Harrison County, Iowa, was also encumbered. The lands in Holt County, Nebraska, at the time the debtor acquired title were encumbered by a mortgage to appellant Federal Land Bank of Omaha and proceedings in foreclosure of that mortgage had already been commenced.

Section 75, sub. r of the Bankruptcy Act defines a farmer for the purpose of the proceeding here under consideration, as follows:

"For the purposes of this section and section 22 (b) the term 'farmer' includes not only an individual who is primarily bona fide personally engaged in producing products of the soil, but also any individual who is primarily bona fide personally engaged in dairy farming, the production of poultry or livestock, or the production of poultry products or livestock products in their unmanufactured state, or the principal part of whose income is derived from any one or more of the foregoing operations, and includes the personal representative of a deceased farmer; and a farmer shall be deemed a resident of any county in which such operations occur."

■ It is contended by counsel for appellee that within this definition the debtor is a farmer, and it is said that a farmer includes "(1) persons primarily and bona fide engaged in producing products of the soil; (2) engaged in dairy farming, poultry or livestock; (3) engaged in producing in unmanufactured state the raw products derived from the above; (4) one, the principal part of whose income is derived from one or more of the foregoing operations." This attempt to fix, catalogue or classify in the abstract the persons who shall be adjudged farmers is not warranted. Each case must be determined upon its own individual facts and circumstances.

■ In the final analysis, under the admitted facts we need only consider whether the debtor was a farmer because personally bona fide engaged primarily in farming operations, or because the principal part of her income was derived from farming operations. In addition to the facts already recited, it is important to note that for many years the debtor was a resident of Chattanooga, Tennessee. She either went there as the wife of Dr. Wood, or became his wife after going to Chattanooga. It does not appear how long she remained the wife of Dr. Wood, but during her married life she lived in Chattanooga, Tennessee. Her husband departed this life, apparently leaving her some estate. Following his death she began to teach school at Chattanooga and has continued teaching there up to the present time. Her income from teaching of late years has been $1,250 a year. She makes no claim to having farmed any of the Iowa land, even by hired help. She owns no livestock, no farm implements, nor tools. She has rented some portion of the Nebraska land to a tenant who furnishes his own equipment and farms only a very small acreage on the shares and makes hay on certain of the land also on the shares. Certain rentals received from the Iowa lands went to the receiver, but there is no evidence that the rents collected by the receiver afford income to her, or that they will ever accrue to her rather than to the mortgagee. The most she ever received from the Nebraska land is estimated by her at from $150 to $200. She claims to be a resident of Holt County, Nebraska, where she has part of her furniture in a house on this land, but she continues to live in Chattanooga, where she has continuously taught school for upwards of twenty years, and teaching is confessedly her primary occupation. Possession of the Holt County, Nebraska, land has been retained by the debtor under the state moratorium for a period of time. Manifestly, if the debtor is a farmer, she became such after she acquired the legal title to the lands in question.

The appellee relies upon the decision of the Supreme Court in First National Bank & Trust Co. v. Beach, 301 U.S. 435, 57 S.Ct. 801, 803, 81 L.Ed. 1206. In that case it appeared that Beach was the owner of a farm with five houses and a barn on it, where he had been living from his birth, occupying one of the houses with his wife and children. The farm in fact had been in the ownership of his family for two genera-

tions. For a time he had been engaged in the mercantile business, but owing to financial losses he began working on the farm again and gave most of his time to it after 1930. The land had an apple orchard of 200 trees, which gave him 1,500 bushels of apples in 1931. He sold fruit from this orchard, cultivated a large garden, planted and raised all kinds of vegetables, fruits, and flowers. He made hay on the land and sold it, repaired the houses, laid several miles of stone wall, built two miles of barbed wire fence, and raised and sold poultry. He was occupied primarily in raising poultry. He kept sheep and a horse for carting and hauling farm tools. His total annual income from 1933 to 1935 was $4,000 of which $2,200 was derived from renting three-quarters of the land to various persons for grazing and cultivation. In discussing the statutory definition, Mr. Justice Cardozo, speaking for the court, among other things said:

"We do not try to fix the meaning of either of the two branches of this definition, considered in the abstract. The two are not equivalents. They were used by way of contrast. Occasions must have been in view when the receipt of income derived from farming operations would make a farmer out of some one who personally or primarily was engaged in different activities. A catalogue of such occasions might err for excess or for defect if made up in advance. Hypothetical situations are laid before us, and the argument is pressed that the definition will breed absurdity if applied to this one of them or that. We refuse to be led away from the limitations of the concrete case. The words 'primarily engaged,' as we find them in the first branch of the definition, do not constitute a term of art. The words 'income derived from farming operations' do not constitute such a term. In every case the totality of the facts is to be considered and appraised."

After reviewing the facts "in combination," the court held that Beach was a farmer. The court said:

"The critical fact is that the debtor worked an acreage large enough to count, that he did not work at anything else, and that he gave to this work, whether profitable or unprofitable, 'the major portion of his time.'

"2. If Beach was a farmer because he cultivated a substantial farm, he did not step into another business by leasing other acres of the tract to tenants who were to use what they hired for grazing or cultivation and other farming operations."

Referring to the claim that Beach was a landlord rather than a farmer, the court said:

"His rentals like his labor smacked of the soil, and made him not less, but more a farmer than he would have been without them. How the case would stand if he had been a merchant or a doctor and had leased a tract of farming land to tenants, we do not have to say. What has happened here is different. The farming and the leasing must be viewed in combination if we are to gain a true perspective, the two tied together as principal and incident. A single tract of land belonging to the debtor has been worked by him in part, and in part worked by others to whom a section of the tract has been let for cultivation. Far from stepping into another business, he has been faithful to the old one in thus dividing up the tillage. To get a living out of the land in one way or another is the thread of common purpose that binds the labor and the leases, and enables us to find in them the tokens of the same vocation. In brief the man is seen to be a farmer by every test of common speech, though his income has been garnered in rents as well as products. We emphasize the fact afresh that the words of the statute to which meaning is to be given are not phrases of art with a changeless connotation. They have a color and a content that may vary with the setting. * * * In the setting of this enterprise, the totality of its circumstances, the roots of the respondent's income go down into the soil."

Whether or not the appellee is a farmer within the purview of this act must be determined by the facts and circumstances in this case "viewed in combination," and the character of the enterprise in which she was engaging determined by "the totality of its circumstances." Acquiring legal title to farm land under the circumstances here disclosed was not a farming operation and did not ipso facto make her a farmer. It can not be said that she was personally engaged primarily in farming operations. She neither farmed the lands, nor did she get her living out of the land. If there was any leasing of the Nebraska land, it was not in combination with any personal farming activities of appellee. Can it be said that the receipt of income derived from farming operations made a farmer out of appellee though she was personally and primarily engaged in teaching school?

92

She devoted her time to her profession and from that received her principal income. The language of the statute does not require that the claimant actually till the soil, but he must be "primarily bona fide personally engaged" in at least one of the enumerated farming operations. As said by the Circuit Court of Appeals, Fifth Circuit, in Williams v. Great Southern Life Insurance Company, 124 F.2d 38, 40:

"He does not become a farmer by merely receiving rents or revenues without more, where he has another business in which he is primarily engaged, although such rents and income may exceed that of such other business or occupation."

Manifestly, the law was not passed for the relief of speculators or landlords who are not and never have been farmers. By no test laid down in the Beach case, can it be said that Mrs. Wood changed her occupation from that of a school teacher to that of a farmer, nor that she ever conducted any farming operations. Under the facts here, accepting appellee's contention as to the law, she was not a farmer on the ground that she was primarily personally engaged in farming operations, nor on the ground that the principal part of her income was derived from farming operations. It is, therefore, not necessary to the decision of this case to explore or attempt definitely to define the limits and meaning of Section 75, sub. r, because the undisputed facts show that the debtor does not come within the limits so fixed.

The judgment appealed from is therefore reversed and the cause remanded with directions to dismiss the proceeding.