JORDAN v. FEDERAL LAND BANK OF
OMAHA et al.

No. 12608.

Circuit Court of Appeals, Eighth Circuit.

Dec. 27, 1943.

under § 75 of the Bankruptcy Act, 11 U.S.C.A. § 203, was not a farmer within the definition of § 75, sub. r of the Act, 11 U.S.C.A. § 203 sub. r [1], is erroneous.

The debtor, who owned a large ranch in Cherry County, Nebraska, filed his petition on August 13, 1942. It was approved and referred to a Conciliation Commissioner August 18, 1942. The first meeting of creditors was held September 14, 1942, at which an offer of composition was made and rejected. On October 23, 1942, the appellees, secured creditors of the debtor, filed a motion to dismiss the proceeding upon the ground that the debtor was not a "farmer" and that the court was therefore without jurisdiction. The District Court referred this motion to the Supervising Conciliation Commissioner for hearing. On November 2, 1942, the debtor filed an amended petition in which he asked to be adjudged a bankrupt under § 75, sub. s, of the Bankruptcy Act, 11 U.S.C.A. § 203, sub. s. On November 20, 1942, the debtor filed his response to the motion of the appellees to dismiss the proceeding. In the response he asserted: "Your debtor further shows to the court that he resides and maintains his home on part of said premises and for many years was engaged in ranch operations, that is, grazing cattle and producing hay and grain crops; that by reason of existing depressed conditions he was compelled to restrict his activities to only part of said premises where he now resides and produces products of the soil, a few head of animals and hay for sale and his support; that by reason of said financial depression he now leases to others a large portion of said premises and supervises the pasturing, haying and repairing of the fences and water supply; that he devotes all his time to the operation of said premises and that the principal part, in fact, all his income is derived from the operation of said premises as aforesaid."

A hearing was had before the Commissioner upon the motion to dismiss. On January 9, 1943, he filed his report, in which he found that the debtor, at the time of the filing of his petition (August 13,

R. Brown, of Creston, Iowa (Geo. B. Clark, of Chambers, Neb., on the brief), for appellant.

Edgar M. Morsman, 3d, of Omaha, Neb. (Truman W. Morsman, of Omaha, Neb., for Stock Yards Nat. Bank of South Omaha, and William W. Graham, of Omaha, Neb., for appellee Federal Land Bank of Omaha, on the brief), for appellees.

Before SANBORN, WOODROUGH, and RIDDICK, Circuit Judges.

SANBORN, Circuit Judge.

The important question presented by this appeal is whether the determination by the Supervising Conciliation Commissioner and by the District Court that the debtor (appellant), at the time he filed his petition

---

[1] "(r) * * * the term 'farmer' includes not only an individual who is primarily bona fide personally engaged in producing products of the soil, but also any individual who is primarily bona fide personally engaged in dairy farming, the production of poultry or livestock, or the production of poultry products or livestock products in their unmanufactured state, or the principal part of whose income is derived from any one or more of the foregoing operations, and includes the personal representative of a deceased farmer; and a farmer shall be deemed a resident of any county in which such operations occur."

1942), was not a "farmer", and recommended that the petition be dismissed. The debtor filed objections and exceptions to the report. On review, the District Court approved and adopted the report and recommendations of the Commissioner, and entered an order denying the debtor's application for adjudication in bankruptcy under his amended petition and dismissing the proceeding. The debtor has appealed.

■ The testimony upon which the Commissioner and the District Court relied in deciding that the debtor was not a "farmer" was that of the debtor. The facts as determined by the Commissioner and relied upon by the District Court must be accepted by us as the basis for our decision, since they are justified by the evidence and reflect the appraisal by the trier of the facts of the credibility of the witness and of the weight of his evidence. See Kauk v. Anderson, 8 Cir., 137 F.2d 331, 333, and cases cited. That being so, we shall take the evidentiary facts to be as stated in the opinion of Judge Delehant, who heard this case below. In re Jordan, D.C., 48 F.Supp., 889, 890, 891. He states the factual basis for the Commissioner's report and the order approving it, as follows:

"The debtor, an unmarried man, about 67 years of age, was reared, and spent his mature life, in Cherry County, Nebraska. He owns the land involved in the action consisting of several thousand acres in separate tracts of ranches suitable chiefly for the grazing of cattle and horses and the production and harvesting of hay. He acquired it in relatively small parcels and over a long period of years. In the aggregate it is capable of pasturing as many as 1,200 head of cattle; and about half of it is subject to utilization as hay land. It is heavily mortgaged and the liens are in the course of foreclosure. Up to about 1934 the debtor personally operated the ranches as a unit and upon a large scale. At that time by reason of financial difficulties he began sharply to curtail his holdings in cattle, and since 1938 has had no cattle. He lost his remaining cattle at that time through chattel mortgage foreclosures. Thereafter and until March, 1941, he employed the land for the production of hay, selling between 600 and 800 tons of hay annually from the property. In 1941 judgment creditors in certain personal judgments against him sued out executions which were levied on his lands and, in the face of their imminent sale for the satisfaction of the judgments and to enable him to raise money wherewith to settle the judgments, he leased the lands on March 24, 1941, by written lease for the sum of $4,000 in cash, which was paid in advance, for the period beginning March 24, 1941, and ending May 1, 1942. In 1942 he extended the lease for one year, or until May 1, 1943, for $4,000, in cash which he collected on March 4, 1942, and at the same time he granted the lessees an option, conditioned on his continued ownership and leasing of the land, to renew the lease until May 1, 1944, for a like cash rental. He reserved from the operation of the lease an old store building located on one of the ranch tracts which he uses chiefly for the storage of his old furniture and minor items of personal property. After leasing the lands, he rented a furnished room in the county seat town of Valentine and removed to, and now lives at, that place, although he occasionally sleeps in the old store building, especially when he is doing any repair work on improvements on the land. He has no equipment for farming or ranching except two horses and some old machinery, including a mower, a sweep and a hay rake long unused and of dubious utility. He actually has no occupation or employment, and merely leases the ranch lands, and by collecting the rentals and paying nothing on the taxes and heavy mortgage debt, lives easily enough.

"It should be noted that the debtor states that since leaving the property, he has planted about a thousand trees on the land and has done some work in the painting of buildings upon it, though the extent of the latter operation is testified to in a very indefinite and unsatisfactory manner, and the court is left under the impression that any such work is an after-thought oriented to the pendency of this case. The fences, wells and windmills on the lands, must, by the lease, be kept in repair by the lessees. The debtor professes to intend to resume after May 1, 1943, the personal operation of the land, and meanwhile to restock the place and repair the improvements. But those claims are quite incredible, even if they be relevant to the instant issue. He discloses no possibility of vindicating them. Their probability, even their credibility, is of a common pattern with an answer made by him in his examination before the local conciliation commissioner. To question 161 as to his age, he replied, 'Well, I am around 67, but I feel I am good to conduct this

ranch for twenty-five or thirty years yet anyway, all due to right living. If you live right, you live to be plenty old enough.' A manifest and consistent want of frankness and candor characterizes the bearing of the debtor throughout both of his reported oral examinations."

In reaching his conclusion that these facts did not bring the debtor within the definition of § 75, sub. r, of the Bankruptcy Act, Judge Delehant relied upon the decision of this Court in Mulligan v. Federal Land Bank of Omaha, 8 Cir., 129 F.2d 438. He said (page 891 of 48 F.Supp.): "Recognizing and applying the rule that the petitioner's status as a farmer in each case must be determined upon the basis of the aggregate facts of the individual case, First National Bank & Trust Co. v. Beach, 301 U.S. 435, 57 S.Ct. 801, 81 L.Ed. 1206, the court is, nevertheless, wholly unable to distinguish the facts presently analyzed from those which controlled the decision in Mulligan v. Federal Land Bank, 8 Cir., 129 F. 2d 438; which arose in this district. There is no essential difference either in the duration of the withdrawal by the parties from their admitted earlier status as farmers, or in the compelling motives for such separation. In the Mulligan case the period of separation was about three years, here between one year and two years. In the Mulligan case, as the circuit court's opinion indicates, ill health (as the district court files show induced by advancing age, and as the same files reveal, with a complication of financial involvement), prompted the leasing; here, financial disaster with the undoubted additional incentive of age impelled the debtor's withdrawal from ranching. The relation of landlord and tenant between the owner and operator in the present action is even more positive and unquestionable than it was in the Mulligan case."

There is, we think, no doubt that this Court, when it decided the Mulligan case, was of the opinion that when a farmer had definitely ceased farming, had removed from the farm, had leased it to a tenant, and had no further connection with its operation, he was no longer a "farmer" as that term is defined in § 75, sub. r, of the Bankruptcy Act. It seems to us, as it did to the trial court, that there is no controlling distinction between that case and the instant case. Unless the Mulligan case is to be modified or overruled, there would

seem to be no justification for the reversal of the order appealed from.

It is true, as the debtor points out, that in the Mulligan case, 129 F.2d at page 441, we said: "* * * The record in this case, viewed in the light most favorable to the debtor, contains nothing which would justify an inference that the debtor, at the time she filed her petition, was 'bona fide primarily and personally engaged' in farming operations or the production of agricultural products or that she derived any income whatever from the operation of the farm which she owned and leased." In the instant case, there is no showing that the debtor was "primarily and personally engaged" in farming or in the production of livestock or of agricultural products, or that he derived any income from the operations conducted by his tenants upon the ranch which he had leased. The cash rentals which he received were not dependent upon the results of the operation of the ranch by his tenants, and he retained no control over their activities in operating the ranch.

We need not decide whether the debtor could have qualified as a "farmer" had the District Court adopted the view that his leasing of the ranch was a mere temporary expedient to enable him to meet pressing financial needs, and that it was his bona fide intention to resume operating the ranch himself as soon as possible. The Supervising Conciliation Commissioner and the District Court both rejected that view of the evidence.

The case, as we must consider it, is that of a former rancher (1) who had leased his ranch for cash rentals to be paid in advance, (2) who had no bona fide intention of resuming the operation of his ranch and no prospects of being able to do so, (3) whose activities with respect to the ranch had nothing to do with its operation or with the producing of livestock or of agricultural products, (4) who had no control over and derived no income from the actual operation of the ranch, and (5) who had no occupation aside from his activities as a landlord.

In view of the opinion of this Court in the Mulligan case, the District Court was justified in concluding that, at the time the debtor filed his petition, he was not a "farmer" within the meaning of § 75, sub. r, of the Bankruptcy Act. See and compare Federal Land Bank of Omaha v.

Wood, 8 Cir., 129 F.2d 89, 91, 92; Skinner v. Dingwell, 8 Cir., 134 F.2d 391, 393. We think that nothing need be added to the discussion of the applicable law contained in Judge Delehant's opinion.

■ The debtor contends that, even if he has failed to qualify as a "farmer", he is, nevertheless, entitled to have his estate administered in bankruptcy as one who "fails to comply with the provisions of this section", § 75, sub. s(3), 11 U.S.C.A. § 203, sub. s(3). This contention is without merit. If the debtor was not a "farmer", he was not entitled to any of the benefits of § 75, and none of its provisions was applicable to him, Davis v. Shackleford, 8 Cir., 91 F.2d 148, 150; Mulligan v. Federal Land Bank of Omaha, 8 Cir., supra, 129 F.2d 438, 440.

■ The appellee Stock Yards National Bank has asked that, under our Rule 10 (f), there be taxed as costs to the appellant $57.85 which it paid for printing a supplement to the appellant's printed record. Counsel for the appellant, apparently without consulting with counsel for the appellees, printed a narrative statement of the evidence which was inexact and was not acceptable to them. They moved for a dismissal of the appeal on the ground that the record printed by the appellant was unfair and misleading [see Rule 10(e)], but the motion was denied because of their right to file a supplement under Rule 10(c). We think that in this case it was necessary that the Court should have before it the evidence as printed in the appellees' supplement. The cost of printing the supplement will be taxed to the appellant.

The order appealed from is affirmed.