## VON. LEIDERSDORFF v. CITY MORTGAGE & INS. CORP. et al.

### No. 6027.

United States Court of Appeals
Fourth Circuit.

Argued March 8, 1950.

Decided April 10, 1950.

Thomas J. Michie and J. T. Camblos, Charlottesville, Va. (Michie & Fishburne, Charlottesville, Va., on brief) for appellant.

W. O. Fife and Claude R. Yardley, Charlottesville, Va. (Paxson, Williams & Fife; Perkins, Battle & Minor; Walker & Copenhaver, and Wingfield, Hamlet & Spitzer, Charlottesville, Va., on brief) for appellees.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

John Von Leidersdorff was denied the benefits of Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203, when he filed a petition to effect a composition with his creditors and the petition was denied by the District Court on the ground that he was not a farmer within the meaning of Section 75, sub. r of the statute. There is much in the evidence to explain the action of the District Court if attention is confined to the financial difficulties and distress suffered by many farmers which the original Frazier-Lemke Act of 1934 and the Amended Act of 1935 were passed to alleviate. 11 U.S.C.A. § 203, sub. s. Wright v. Vinton Branch Bank of Roanoke, Va., 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736, 112 A.L.R. 1455. Von Leidersdorff did not belong to this class. In his early years, when he lived in Denmark and was known as Baron Von Leidersdorff, he had been the manager of a dairy farm. He came to the United States in 1921 and married an American citizen who was possessed of a handsome income so that when he filed

his petition in the bankruptcy court he was not in financial need. The point at issue, however, must be decided in the light of Section 75, sub. r, 11 U.S.C.A. § 203, sub. r, where the term "farmer" is defined. It provides: "For the purposes of this section, section 22(b), and section 202, the term 'farmer' includes not only an individual who is primarily bona fide personally engaged in producing products of the soil, but also any individual who is primarily bona fide personally engaged in dairy farming, the production of poultry or livestock, or the production of poultry products or livestock products in their unmanufactured state, or the principal part of whose income is derived from any one or more of the foregoing operations, and includes the personal representative of a deceased farmer; and a farmer shall be deemed a resident of any county in which such operations occur."

Prior to 1939 Von Leidersdorff lived in Greenwich, Connecticut, and Westchester County, New York. He was engaged for some years in the sale of objects of art and had a gallery on Fifth Avenue in New York City. In 1939 he moved to Albemarle County, Virginia, and purchased a property known as Guthrie Hall which comprised a run-down overgrown farm of 320 acres and a dwelling house in bad repair. An adjoining farm known as Bonnie Brae of 300 acres was subsequently purchased and title was taken in his wife's name. He brought with him and placed in the house at Guthrie Hall a valuable collection of paintings, statuary, books and furniture. He immediately began extensive improvements to Guthrie Hall which included substantial repairs to the dwelling house, the erection of four new barns, a garage and machine shop, the clearing of 300 acres of land, the erection of miles of new fences and a chicken house to accommodate 1,000 chickens. He employed no general contractor for this work but supervised it himself with the assistance of a superintendent. These large improvements required a payroll of $3,000 a month and the money was borrowed from the bank. Estimates of total expenditures vary from $10,000 to $50,000 and are incapable of exact determination since the debtor kept no adequate set of books and such as he had

were lost somewhat prior to this proceeding. The approximate value of the real estate was reported by appraisers appointed by the court at $50,000 and the value of the contents of the residence at $67,000.

Other expenditures were made in the breeding of horses and Angus cattle. These operations were of considerable extent during the early years and so long as the debtor was able to borrow money. At one time he had 40 horses and 200 head of cattle and crops were raised on the farms to feed them. The debtor met with a severe reverse in 1944-5 when he shipped a string of horses to Florida to be sold, expecting a return of more than $85,000 but realized only $5,000 or $6,000 when racing was prohibited under war regulations. Not long after this disaster the debtor was forced to sell his Angus herd to satisfy his creditors and thereafter the farming operations diminished in size until they reached a minimum at the time the petition was filed on February 11, 1949. The total indebtedness was listed as $344,544.14 of which $226,000 was due the debtor's step-son who had advanced to him large sums of money to pay debts after he started his Virginia business. The value of the assets was given in the schedule at $100,000.

The District Judge was doubtful whether the debtor was at any time engaged in such activities as would permit him to be treated as a farmer within the meaning of the Act, since his primary activity seemed to the court to be the breeding and training of race horses and these did not appear to constitute the production of live stock which the Act recognizes as a farming operation. We think, however, that when the raising of race horses and the Angus cattle and the production of crops for their maintenance are all considered, it must be said that during the early years in Virginia the debtor was a farmer, since he was primarily bona fide personally engaged in the production of live stock. There can be no doubt that he was completely engrossed in this activity and had no other occupation; and although it is all too clear that he was recklessly extravagant, irresponsible and inefficient, and that his manner of life differed from the typical farmer

who was earning his living by the sweat of his brow, these delinquencies did not exclude the debtor from the benefits provided by the Act of Congress. The Act makes no provision with respect to competency or industry and is not confined to those who work with their hands. Collier on Bankruptcy, § 75.13. Chaney v. Stover, 4 Cir., 123 F.2d 945.

The real question in the case is whether, as was held below, all the debtor's farming operations had ceased so completely that he was no longer primarily engaged in the occupation of farmer when the petition was filed. This is the crucial point for it is settled that a debtor must be qualified at the time he files his petition. See Mulligan v. Federal Land Bank of Omaha, 8 Cir., 129 F.2d 438; Jordan v. Federal Land Bank of Omaha, 8 Cir., 139 F.2d 203; Smith v. White, 9 Cir., 166 F.2d 269. It must be admitted that on February 11, 1949, farming operations were nearly at a standstill and that this was not entirely due to the fact that February is not a busy season on a Virginia farm. The race horses and the Angus cattle were gone and a smaller herd of white faced cattle which the debtor had collected in 1946 had also been sold. The stock remaining consisted of 6 farm horses, 2 cows and about 15 pigs. Of the substantial mechanical equipment which was used during the early years only a disc harrow, 2 plows, 1 mower, 2 wagons and a jeep remained. Two men were employed on the farm and one in the house. Farming operations had steadily diminished since 1946 when the debtor was no longer able to borrow money. However, some cattle, from 10 to 15 in number, were kept until 1948 when they were sold. In 1947 200 bushels of corn were raised and in 1948 about 50 acres were in corn and some alfalfa was grown which was cut in 1949 after the petition was filed. In 1949 200 acres were in hay which were estimated to yield 200 tons.

Compared with prior activities, these quantities seem pitifully small and yet we find it difficult to conclude that all farm operations had been completely abandoned. The petitioner, however, must go a step further than this and show that when the proceeding was instituted he was primarily bona fide personally engaged in this occupation. We think that this must be the case, unless it appears that the debtor had some other occupation as a primary pursuit or had so completely given up farming as to be said to have abandoned it. The mere curtailment of activities is not sufficient. It has been held in many cases that the status of a farmer does not depend upon the success or failure of his operations, or because he is forced to leave by reason of financial stress. Indeed this rule has been applied after the farmer has been evicted from his property. Layton v. Thayne, 10 Cir., 133 F.2d 287; McLean v. Federal Land Bank of Omaha, 8 Cir., 130 F.2d 123; Noble v. Hopewell Nat. Bank, 3 Cir., 98 F.2d 623; Leonard v. Bennett, 9 Cir., 116 F.2d 128. See also First Nat. Bank & Trust Co. v. Beach, 301 U.S. 435, 57 S.Ct. 801, 81 L.Ed. 1206; Collier on Bankruptcy § 75.13; Remington on Bankruptcy §§ 4012, 4013.

The debtor in the pending case was not compelled to seek other occupation for a livelihood since he could depend on his wife's resources. He still lives on the property and continues to carry it on a small scale, and when he filed the petition he was endeavoring, with the cooperation of his step-son who was willing to postpone his claim to that of other creditors, to settle with his creditors at 50¢ on the dollar so that he might again engage in stock raising on a substantial scale.

These circumstances must be weighed with certain evidence which led the District Judge to dismiss the petition. The bankrupt made statements during the examination by his creditors on three different occasions, which tended to show that he had been absent from the farm for considerable periods in 1947 and 1948, and had not given the place much attention. It is obvious, however, that the work of the farm was so restricted that not much supervision was required; and the absence of the debtor for as much as one-half of the time during certain of the later years was explained by the fact that during one year he spent a large time in New York with his step-son, who was ill, and during an-

other year in Baltimore with his wife who was ill in a Baltimore hospital, returning from time to time to the farm in Virginia. Since the debtor had access to resources which enabled him to be absent from time to time, and there is no evidence of his engaging in any other occupation, it seems unreasonable to conclude that the farming operations had been completely abandoned. The judgment of the District Court is reversed and the case is remanded for further proceedings.

Reversed and remanded.